Wanda C. STRINGER, Monica Micou, Marcus Peterson, individually and as members of the class they represent, Plaintiffs,

v.

Earl S. LUCAS, in his individual capacity, Joseph Woods, Debra Bronner and Jacqueline Ellis individually and as members of the City of Mound Bayou Election Commission, Kirk Fordice, in his official capacity as Governor and a member of the State Election Commission, Dick Molpus, in his official capacity as Secretary of State, and as a member of the State Election Commission and Mike Moore, in his official capacity as Attorney General and as a member of the State Election Commission, Defendants.

Civ. A. No. DC 89–120–D–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Jan. 25, 1993.

Alma C. Campbell, Memphis, TN, Willie Perkins, Sr., Greenwood, MS, for plaintiffs.

Robert Sanders, Sp. Asst. Atty. Gen., Jackson, MS, Robert Buck, Greenville, MS, for defendants.

Before JOLLY, Circuit Judge, and BIGGERS and DAVIDSON, District Judges.

## MEMORANDUM OPINION

This action arises out of an election held on June 6, 1989 for the office of Mayor of Mound Bayou, Mississippi. Wanda Stringer, the plaintiff herein, received the highest number of votes in the election for mayor, but at the instigation of incumbent Mayor Earl S. Lucas, the City Elections Commission disqualified plaintiff, and in her place certified Mayor Lucas, who received the second highest vote total, as the winner of the election. Ms. Stringer and the other named plaintiffs thereafter filed the instant action for declaratory and injunctive relief based on causes of action arising under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and under the Fourteenth and Fifteenth Amendments to the United States Constitution.[1] In addition to Ms. Stringer, the named plaintiffs are resident citizens of Mound Bayou who voted for Ms. Stringer in the 1989 election, and the defendants include state officials who are members of the State Elections Commission as well as the local members of the City of Mound Bayou Elections Commission. Plaintiffs' section 5 claim necessitat-ed that this three-judge district court be convened.

The plaintiffs also filed a parallel action in the Bolivar County Circuit Court, asserting *inter alia* that the municipal elections commission misconstrued state law (specifically, *Meeks v. Tallahatchie County*, 513 So.2d 563 (Miss.1987)), when it determined that Stringer was ineligible to be certified and instead certified the incumbent mayor, Earl S. Lucas, as the winner. In the state court proceeding, the trial court ruled in favor of the defendants, and the plaintiffs appealed to the Mississippi Supreme Court. On December 13, 1989, this three-judge court[2] issued an opinion and accompanying order wherein the court exercised the doctrine of *Pullman*[3] abstention and ordered that this action be stayed pending resolution of the controlling issues contained in plaintiffs' parallel action in state court. In the December 1989 opinion, this court stated that the resolution of state law issues will either moot the plaintiffs' statutory and constitutional claims or will at least clarify the basis in law upon which the claims are founded. On October 1, 1992, the Mississippi Supreme Court decided *Stringer, et al., v. Lucas, et al.*, 608 So.2d 1351 (Miss.1992). With final adjudication of the state court proceeding, the reason for this court's Order of Stay no longer exists, and the same is hereby lifted. Furthermore, the Mississippi Supreme Court's opinion clarifies issues of state law which affect the federal claim pursuant to section 5 of the Voting Rights Act. For reasons of clarity and continuity, a brief background of additional facts is presented before the court discusses the substantive issues which necessitated this three-judge court pursuant to the Voting Rights Act of 1965.

### I. Facts

In 1984, Wanda Stringer was elected to serve on the Bolivar County Elections Commission, a post that she has held through-

---

1. Plaintiffs' Fourteenth and Fifteenth Amendment claims are brought under 42 U.S.C. § 1983.

2. The original members of the three-judge court were Chief Judge Charles Clark of the United States Court of Appeals, Judge Neal B. Biggers, Jr., United States District Court, and Judge Glen H. Davidson, United States District Court. Upon the retirement of Chief Judge Charles Clark, Judge E. Grady Jolly, United States Court of Appeals, was appointed to fill the vacancy.

3. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

out all relevant times in regard to this cause of action. In addition to her service on the county elections commission, Ms. Stringer was appointed to serve on the City of Mound Bayou Election Commission for one election held in June of 1985; and, Ms. Stringer was appointed City Clerk for the City of Mound Bayou from July of 1985 until July of 1988.[4] In February of 1989, Mayor Lucas appointed Joseph Woods, Debra Bronner and Jacqueline Ellis to serve as election commissioners for the upcoming mayoral election for June 6, 1989. Ms. Stringer, incumbent Mayor Earl Lucas, and two other candidates qualified as candidates for the office of mayor. After the polls closed on election day, Wanda Stringer received the highest total with 332 votes, and Earl Lucas received 228 votes.[5]

The election commissioners did not immediately certify the results. On June 8, 1989, defendant Lucas filed a short memo with the Mound Bayou Election Commission contesting Ms. Stringer's eligibility to run for public office based upon her membership on the Bolivar County Election Commission. The municipal election commission met at 1:30 p.m. on June 9, 1989 with Mayor Lucas. At this meeting, the Mound Bayou Election Commission retroactively disqualified Wanda Stringer and certified Mayor Lucas as the winner of the mayoral election. The plaintiffs assert, and the defendants do not contest, that they received no prior notice of the hearing; but at 3:00 p.m. on the same afternoon, Ms. Stringer was told to appear before the commission one hour later. At 4:00 p.m., Ms. Stringer and several supporters appeared before the commission where they received the news that she had been disqualified and Mayor Lucas certified as the winner. The commission made its decision based upon Mississippi Code Annotated § 23–15–217(1), and *Meeks v. Tallahatchie County,* 513 So.2d 563 (Miss.1987). Following this adverse decision by the commission, plaintiffs filed the instant suit in United States District Court and a parallel action in state court. In the federal action, plaintiffs allege that the rule of law articulated by the Mississippi Supreme Court in *Meeks v. Tallahatchie County,* 513 So.2d 563 (Miss.1987),[6] as contained in *Miss.Code Ann.* § 23–15–217(1), reflects a change in a standard, practice or procedure with respect to voting which has never been precleared, in violation of section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Plaintiffs further claim that retroactive disqualification of Wanda Stringer effectively disenfranchised the voters who supported her, and that those voters have been denied equal participation and a voice in the election, all in violation of the Fourteenth and Fifteenth Amendments. Finally, the plaintiffs allege that the commission's action without prior notice or hearing violates the due process guarantees of the Fourteenth Amendment. Today, this three-judge court considers only the plaintiffs' claim with regard to 42 U.S.C. § 1973c, preclearance with the United States Department of Justice. In so doing, this court concludes that the Fourteenth and Fifteenth Amendment constitutional claims are to be resolved by the assigned district court judge in a separate memorandum opinion and order to follow. Procedurally, the Voting Rights claim is before the court upon motion to dismiss pursuant to F.R.C.P. 12(b)(6) filed by the state defendants.[7] However, this court's

**4.** One duty of the city clerk's position included the job of Voting Registrar.

**5.** These totals do not include approximately 60 absentee ballots which were the subject of a challenge. The city elections commission eventually counted the ballots, but their addition did not change the result. After counting the 60 absentee ballots, Wanda Stringer's final tally was 334 votes, and Earl Lucas received 287 votes.

**6.** The supreme court's decision in *Stringer, et al. v. Lucas, et al.,* 608 So.2d 1351 (Miss.1992), affirms and re-endorses the rule of *Meeks.* Con-

sequently, plaintiffs now allege that both *Meeks* and *Stringer v. Lucas* violate section 5 of the Voting Rights Act.

**7.** The state defendants include Kirk Fordice, Governor, Dick Molpus, Secretary of State, and Mike Moore, Attorney General. While suit was originally filed against Ray Mabus in his official capacity as Governor of the State of Mississippi and as a member of the State Elections Commission, counsel for state defendants have submitted responses on behalf of Mr. Fordice in his official capacity as Governor of the State of Mississippi and as a member of the State Elec-

memorandum opinion on December 13, 1989 explained that the court would accept for consideration the evidentiary materials presented by both sides and thus treat the motion as one for summary judgment under F.R.C.P. 56. *See* F.R.C.P. 12(b).

### Summary Judgment Standard

Summary judgment is an appropriate disposition only if the record reveals that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Federal Sav. and Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir.1992); Fed.R.Civ.P. 56(c). The pleadings, depositions, admissions, answers to interrogatories and affidavits must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, summary judgment is mandated after adequate discovery and upon proper motion against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### II. Conclusions of Law

The issue for this court is whether or not the disqualification of Wanda Stringer from the election of mayor of Mound Bayou constituted a violation of section 5 of the Voting Rights Act on the part of the state defendants. Two decisions by the Mississippi Supreme Court and one legislative enactment are the focal point for the resolution of this question. Specifically, *Stringer, et al. v. Lucas, et al.*, 608 So.2d 1351 (Miss.1992), *Meeks v. Tallahatchie County*, 513 So.2d 563 (Miss.1987), and *Miss. Code Ann.* § 23–15–217(1) are in issue in this case. Section 23–15–217(1) of the Mississippi Election Code has been the object of several amendments since 1989. However, the court is interested in the content of the statute as it existed in June of 1989 when Wanda Stringer was disqualified as a candidate for mayor. The statute provided as follows:

> (1) A commissioner of election of any county **shall not be a candidate for any other office at any election** held or to be held during the four-year term for which he has been elected to the office of commissioner of election or with reference to which he has acted as such; and all votes cast for any such person at such election shall be illegal and shall not be counted, except that he may be a candidate for the office of county election commissioner.

*Miss. Code Ann.* § 23–15–217(1) (Supp.1988) (emphasis added).

Clearly, section 23–15–217(1) [8] imposed an absolute prohibition barring Wanda Stringer from seeking any elected office, with the exception to re-election to the commission, during the four-year term in which she was elected to the Bolivar County Elections Commission. As the statute expresses, all votes which were cast for Stringer

---

tions Commission. Hence, the court recognizes the substitution.

There is no motion to dismiss on behalf of the local defendants (Lucas, Woods, Bronner and Ellis) presently before the court.

8. This language of the statute was enacted March 29, 1989, and was relied upon in June of 1989 when the Mound Bayou Elections Commission disqualified Wanda Stringer. Prior to March 29, 1989, the statute contained the same prohibition:

> A commissioner of election of any county shall not be a candidate for any office at any election for which he may have been elected or with reference to which he has acted as such … except that he may be a candidate for the office of county election commissioner.

*Miss. Code Ann.* § 23–15–217(1) (Supp.1987).

Section 23–15–217(1) has been the focus of another recent amendment. In the 1991 legislative session, this provision was amended to allow members of a county election commission to seek any office provided that the candidate resigns prior to January 1 of the year in which he desires to seek the office. *Miss. Code Ann.* § 23–15–217(1) (Supp.1992). The 1991 amendment provides an interesting footnote to the "evolution" of § 23–15–217(1). However, it is unavailing for the plaintiff for two reasons. Obviously, the amendment was not in effect in 1989. Second, Wanda Stringer never resigned from the Bolivar County Elections Commission. Therefore, even the present-day 1991 version of § 23–15–217(1) would apparently disqualify Ms. Stringer.

would be "illegal." In addition to § 23–15–217(1), the court has the benefit of the Mississippi Supreme Court's decision in *Meeks v. Tallahatchie County,* 513 So.2d 563 (Miss.1987). The *Meeks* decision did nothing more than to apply § 23–15–217(1) to the facts of that case. In commenting upon the statute, the state supreme court stated the following:

> Although its wording is general, we find the meaning of Section 23–15–217 reasonably clear. The statute provides two disqualifications upon a county election commissioner offering himself as a candidate for any other office. First, the commissioner is disqualified with respect to 'any election for which he may have been elected.' The elections commissioners are elected for four year terms. They are elected to act with respect to all general elections held within those terms. In addition, they have many other duties prescribed by statute. The first disqualification in Section 23–15–217 means that no person holding the office of elections commissioner may be a candidate for election to any other office at any election held or to be held during the four year term for which that person has been elected elections commissioner.

*Meeks,* 513 So.2d at 566.

In *Meeks,* the court explained that the policy considerations which formed the reason for the prohibition were compelling. In order to assure public faith and confidence in our system of democratic elections, the office of Elections Commissioner must be "totally beyond compromise or even perception of the possibility of compromise." *Meeks,* 513 So.2d at 569. An elections commissioner must be as aloof from partisan politics as members of the judiciary, and that ideal is at odds when a person who has had control over the voter rolls resigns to seek another office during the tenure of office as elections commissioner. *Id.* Once again, in *Stringer, et al. v. Lucas, et al.,* 608 So.2d 1351 (Miss.1992), the supreme court merely affirmed and reendorsed the rule of § 23–15–217(1) and *Meeks:*

> The decision in *Meeks* applies to the facts of this case because Stringer had the statutory duty to purge and revise the voter rolls for the several precincts in Bolivar County. This duty and the mandate to keep the election commissioners above suspicion are in conflict. Also, the *Meeks* decision is very broad in stating that 'no person holding the office of elections commissioner may be a candidate for election to **any other office** at any election held or to be held during the four year term for which that person has been elected elections commissioner.' *Meeks,* 513 So.2d at 566 (emphasis added). No exemption was made, and indeed should not have been made in light of the above statutory duty, for county election commissioners who later decide to run for municipal office.

*Stringer, et al. v. Lucas, et al.,* 608 So.2d 1351, 1356–57 (Miss.1992).

In summary, the rule of *Meeks* added nothing new to the clear and unambiguous rule of prohibition contained in *Miss. Code Ann.* § 23–15–217(1). And, *Stringer, et al. v. Lucas, et al.,* added nothing new to the rule of *Meeks,* or the statute. In addition to § 23–15–217(1), *Meeks,* and *Stringer,* to like effect is *Pitchford, et al. v. Carroll, et al.,* No. J89–0363B (S.D.Miss. Feb. 25, 1991) (unpublished opinion). The plaintiffs apparently recognize that their position is at odds with the rigid rule of prohibition as embodied in the statute, *Meeks,* and *Stringer.* Consequently, plaintiffs contend that the disqualification of Stringer by the Mound Bayou Election Commission was in violation of section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Specifically, plaintiffs theorize that since the disqualification of Stringer was based on § 23–15–217(1) and *Meeks,* Stringer was disqualified by an invalid statute and state supreme court opinion since neither the statute nor *Meeks* have been precleared by the United States Department of Justice as required by the Voting Rights Act. Since the Mississippi Supreme Court has now decided *Stringer, et al. v. Lucas, et al.,* the plaintiffs add their own case to the list of "invalid law" which has not been precleared.

Section 5 of the Voting Rights Act requires a state or any political subdivision of

the state to institute a declaratory judgment action whenever it "shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" different from that in effect on the relevant date set by the statute if the change in voting practice has the potential to deny or abridge the right to vote on the basis of race or color, unless the change has been precleared by the United States Department of Justice. 42 U.S.C. § 1973(c) (1981). The argument which plaintiffs advance rapidly loses face in light of the fact that *Meeks* and *Stringer* reflect no change whatsoever in voting practice or procedure that would fall subject to the mandates of the Voting Rights Act. Moreover, the rule prohibiting county elections commissioners from seeking other elective office has its origin in certain Mississippi statutes, all of which, in fact, *have been precleared* by the Department of Justice.

Chapter 483 enacted in the 1989 Mississippi Legislature, codified at sections 23-15-217(1) and 23-15-263(2), was submitted to the Attorney General for preclearance under section 5 of the Voting Rights Act on or about April 11, 1989. The 1989 amendment contained in chapter 483 was a legislative response to the Mississippi Supreme Court's decision in *Breland v. Mallett,* 527 So.2d 629 (Miss.1988). *Breland* held that members of a political party county executive committee were prohibited from seeking any elective office during their term on the committee. *Breland,* 527 So.2d at 631. Chapter 483 of the 1989 amendment mooted the holding in *Breland* and specifically

provided that county executive committee members could remain on the committee while seeking municipal office. *See Miss. Code Ann.* § 23-15-263(2).[9] Consequently, the amendment prompted by *Breland,* codified at § 23-15-263(2), did not address disqualification of county election commissioners. In any event, the United States Attorney General precleared chapter 483 on June 13, 1989, which contained the applicable version of *Miss.Code Ann.* § 23-15-217(1), relied upon by the Mound Bayou Election Commission, as well as the amended § 23-15-263(2). Therefore, the specific statute, § 23-15-217(1), was precleared only four days following the disqualification of candidate Stringer.[10] Despite the fact that preclearance occurred four days after the disqualification of Stringer, the supreme court's 1987 decision in *Meeks v. Tallahatchie County,* 513 So.2d 563 (Miss. 1987) was based on the pre-June 13, 1989 version of § 23-15-217(1), *which had also been precleared* by the Department of Justice on December 31, 1986. This pre-June 13, 1989 version of § 23-15-217(1) contained the identical rule of prohibition:

> A commissioner of election of any county shall not be a candidate for any office at any election for which he may have been elected or with reference to which he has acted as such; and all votes cast for any such person at such election shall be illegal and shall not be counted, except that he may be a candidate for the office of county elections commissioner.

*Miss.Code Ann.* § 23-15-217(1) (Supp. 1987).[11]

---

**9.** (2) A member of a county executive committee shall be automatically disqualified to serve on the county executive committee, and shall be considered to have resigned therefrom, upon his qualification as a candidate for any elective office. The provisions of this subsection shall not apply to a member of a county executive committee who qualifies as a candidate for a municipal elective office.

**10.** Stringer was disqualified on June 9, 1989.

**11.** The state defendants point out that the rule prohibiting a county elections commissioner from seeking any other elective office during the full four-year term of his elected service has received continuous, uninterrupted endorse-

ment from the Department of Justice since the enactment of the Voting Rights Act of 1965.

On November 1, 1964, the disqualification of county election commissioners from seeking other office was governed by section 3242 of the Mississippi Code of 1942. In 1968, this code section was carried forward in chapter 568 of the Laws of 1968. Chapter 568 of the Laws of 1968 was submitted to the Attorney General pursuant to section 5 of the Voting Rights Act and received clearance from the Attorney General on or about February, 1969. In 1972, this section was recodified as *Miss.Code Ann.* § 23-5-95. In 1986, § 23-5-95 was recodified and renumbered as *Miss.Code Ann.* § 23-15-217. The 1986 recodification was part of the 1986 modernization of election laws, as set forth in

Regardless of whether preclearance of the June 1989 version of § 23–15–217(1) was effective or not on the day that Wanda Stringer was disqualified, June 9, 1989, the pre-June 13, 1989 version contained the same rule of prohibition which was precleared on December 31, 1986. The sum and substance of uncontroverted facts contained in this record reveal that Stringer's disqualification was required under both (either/or) versions of § 23–15–217(1). Therefore, determining which statute was in effect on the day of disqualification is little more than an academic exercise in futility.[12] The court need not, and does not, consider this question. Regardless of which code provision was in effect when Stringer was disqualified by the municipal elections commission, the action was statutorily required by state law which had been approved by the Department of Justice.

Furthermore, the court categorically rejects plaintiffs' suggestion that *Meeks v. Tallahatchie County*, 513 So.2d 563 (Miss. 1987), and *Stringer, et al. v. Lucas, et al.*, 608 So.2d 1351, *supra*, represent changes in standard, practice or procedure with respect to voting thereby requiring a preclearance by the Department of Justice pursuant to the Voting Rights Act. *Meeks* and *Stringer* furnished nothing more than a judicial restatement of a long-standing, well-settled rule of a statutory prohibition which prevents county elections commissioners from seeking any other elective office, except for re-election to the commission, while serving in that capacity. To this end, the state defendants argue that election commissioners in Mississippi have

been prohibited from seeking any other elective office since the year 1871.[13] Certainly by 1937, when the Mississippi Supreme Court decided *State ex rel. District Attorney v. Jones*, 177 Miss. 598, 171 So. 678 (1937), the rule of prohibition was a fixture in the common law of this state. *Jones* held that a county elections commissioner could not seek election to another office while serving in that capacity. *Jones*, 171 So. at 679. While the *Jones* decision did indicate that resigning from the elections commission would enable a former commissioner to seek other elective office, *Meeks* changed pre-existing law only to the extent that it modified *Jones* and held that resigning from the commission could not be used to shorten the period of disqualification. In this regard, *Meeks* clarified that the period of disqualification for an elections commissioner lasted throughout the four-year term for which he was elected, notwithstanding any resignation that one might submit prior to the expiration of the term of office. *Meeks*, 513 So.2d at 566. Since Stringer never resigned from the Bolivar County Elections Commission, any "change" in the law announced in *Meeks* is not applicable to her under the facts of this case.

The court concludes that there are no genuine issues of material fact, and as a matter of law the plaintiffs have failed to establish any actions by the state defendants that violated section 5 of the Voting Rights Act. Specifically, the court finds that the actions taken by the Bolivar County Elections Commission in disqualifying Ms. Stringer were made in accordance with

---

chapter 495 of the Laws of 1986. Chapter 495 of the Laws of 1986 was submitted to the Attorney General, and preclearance was received on December 31, 1986. In 1989, § 23–15–217 was again modified by language contained in chapter 483 of the Laws of 1989. Preclearance of chapter 483 was received on June 13, 1989. Finally, the court takes judicial notice that § 23–15–217 was amended by the Laws of 1991, and the Department of Justice interposed no objection on August 14, 1991.

**12.** The state defendants argue that even if the applicable statute is that which was precleared on June 13, 1989, the preclearance would have retroactive effect to June 9, 1989, citing *NAACP v. Hampton Co. Elect. Comm'n*, 470 U.S. 166,

105 S.Ct. 1128, 84 L.Ed.2d 124 (1985); *Hathorn v. Lovorn*, 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982); *McDaniel v. Sanchez*, 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981); *Berry v. Doles*, 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978); *Perkins v. Matthews*, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *East Flatbush Elect. Comm'n v. Cuomo*, 643 F.Supp. 260 (E.D.N.Y.1986).

**13.** *See* Mississippi Code of 1871, § 342; Mississippi Code of 1880, § 122; Mississippi Code of 1892, § 3634; Mississippi Code of 1906, § 4141; Hemingway's Code of 1917, § 6775; Mississippi Code of 1930, § 6213; Mississippi Code of 1942, § 3242.

683

settled principles of state law which had passed constitutional muster pursuant to the Voting Rights Act of 1965. Accordingly, the state defendants are entitled to summary judgment as to that count of plaintiffs' complaint alleging violations of section 5 of the Voting Rights Act.