513 So.2d 563 (1987)
Eddie MEEKS
v.
TALLAHATCHIE COUNTY, Mississippi Democratic Executive Committee, and Tallahatchie County, Mississippi.
No. 58447.
Supreme Court of Mississippi.
August 19, 1987.
As Modified on Denial of Rehearing September 16, 1987.
Ellis Turnage, Morris & Turnage, Cleveland, for appellant.
William R. Sanders, Charleston, John W. Whitten, Jr., Breeland & Whitten, Sumner, Joe L. Tennyson, Charleston, for appellee.
En Banc.

ON PETITION FOR REHEARING
ROBERTSON, Justice, for the Court:

I.
Today's appeal requires that we construe a section of our recently enacted Elections Code, a provision placing severe restraints upon political activities of county commissioners of election. Specifically at issue is whether a commissioner may resign and seek another office during the term for which he was elected commissioner. We find that, by virtue of constitutionally valid legislative enactment, our law disqualifies an elections commissioner from such candidacy. We affirm the Circuit Court's ruling which is to that effect.

*564 II.
On November 6, 1984, Eddie Meeks, Plaintiff below and Appellant here, was elected to the office of Elections Commissioner, District 5, Tallahatchie County, Mississippi. Thereafter, Meeks was elected Chairman of the Tallahatchie County Elections Commission, a capacity in which he served until he tendered his letter of resignation as Commissioner effective June 1, 1987.
On May 14, 1987, Meeks formally qualified as a candidate for the Democratic Party nomination for the office of Justice Court Judge, Post 2, Tallahatchie County, Mississippi. On that date Meeks filed his qualifying statement of intent with the Circuit Clerk of Tallahatchie County, Miss. Code Ann. § 23-15-299 (Supp. 1987), and paid the statutorily required filing fee. At this time, Meeks was still serving as Elections Commissioner as explained above, his resignation not being tendered until some seventeen days thereafter.
On June 14, 1987, the Tallahatchie County Democratic Party Executive Committee met to consider the matter of certification of candidates for the August 4, 1987, Democratic Party primary election. At that meeting, the Executive Committee refused to certify Meeks as a candidate, reasoning that he had been elected to act as Elections Commissioner and in fact had acted as Elections Commissioner with respect to the 1987 elections. See Miss. Code Ann. § 23-15-217 (Supp. 1987).
Meeks immediately brought suit in the Circuit Court of Tallahatchie County seeking an order directing that the Democratic Executive Committee place his name on the ballot as a candidate for Justice Court Judge. Upon expedited consideration and upon trial on the merits, the Circuit Court rendered a bench opinion followed by a final judgment denying Meeks relief. This appeal has followed.

III.
Meeks first assigns as error the alleged failure of the Tallahatchie County Democratic Executive Committee to afford him due process of law. His point is that, at least in his view, he was not afforded an adequate opportunity to present his views to the Democratic Executive Committee before certification was denied.
The record reflects that the Democratic Executive Committee met on June 14, 1987, without Meeks present and at that meeting the Committee did indeed vote to deny certification. While the Committee was still in session, Meeks received word of its action. He immediately went to the Committee meeting and at that time was allowed to present his views. The Committee did not reverse its decision. Thereafter, as indicated above, Meeks was afforded plenary hearing de novo on the merits in the Circuit Court. Significantly, nothing in the proceedings before the Circuit Court reflects any particular deference to the decision of the Democratic Executive Committee such as, for example, a refusal to disturb findings of fact unless clearly erroneous.
Without doubt, election to public office is a public function and any integral part of that function must be constitutional. The nomination process may appear to be more a private than a governmental function because it is conducted by political parties. Appearances notwithstanding, our law recognizes that the selection of party nominees by primary elections is an integral part of the entire election process. Fanning v. State, 497 So.2d 70, 72 (Miss. 1986); Mississippi State Board of Election Commissioners v. Meredith, 301 So.2d 571, 573 (Miss. 1974). In any event, we think it established Fourteenth Amendment jurisprudence, however, that the primary election process is sufficiently state action that persons affected by it and participating in it have available due process protections. See generally Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).
Without engaging in linguistic gymnastics regarding property rights, liberty interests and the like, we hold that when one *565 files the proper qualifying papers and pays the requisite filing fee to become a candidate for public office, neither the state nor, in the case of a primary election, a political party may arbitrarily or capriciously deprive him or her of a place on the ballot. Eddie Meeks was entitled to due process protections on two levels. First, he was entitled to the opportunity to be heard. Second, he was entitled that his name not be finally stricken from the ballot except that result be required by law.
Due process in the purely procedural context contemplates advance notice and the opportunity to be heard. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 316, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Due process is a very flexible concept, however, and what process is due depends in substantial part upon the nature of the governmental function involved as well as the private interest affected by governmental action. Wolff v. McDonnell, 418 U.S. 539, 560, 94 S.Ct. 2963, 2976-77, 41 L.Ed.2d 935, 953 (1974). Political parties when performing public functions of the sort at issue here are entitled to operate with considerable informality. Where judicial review de novo is timely available, the constitution is more tolerant of such informality than might otherwise be the case. Cf. North v. Russell, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976).
Incident to the conduct of a party primary election, a political party's county executive committee is required, upon the expiration of the qualifying deadline, to review the papers of all who have offered as candidates for the party nomination and decide in each instance whether the individual is qualified to run for the office. No advance notice and opportunity to be heard is required before that meeting. Where the executive committee decides that a person is not eligible, however, and where that person wishes to be heard regarding the matter, the executive committee, as a matter of due process, is required to allow the disqualified candidate a reasonable opportunity to present his case.
True, the hearing afforded Meeks was somewhat unorthodox in the sense that Meeks informally got word that the Committee was meeting, had acted negatively upon his candidacy, and that he then went uninvited to the meeting. No matter. What is important  indeed, outcome determinative  is that Meeks appeared before the Committee and fully presented his views and his case. This process was described in the record of the trial below. At no point has Meeks indicated to us that, if he had had more advance notice and a greater opportunity to be heard, he could have presented additional or other information. He has failed to show to us that in any way he could have presented a better or more persuasive case on behalf of his candidacy had he been given greater advance notice and a more liberal opportunity to be heard. Any deficiency in the process he received is harmless.
Our view of Meeks' procedural due process claim is greatly reenforced by the opportunity for immediate judicial review which was available to Meeks and with respect to which he took full advantage. Meeks filed his complaint in the Circuit Court of the First Judicial District of Tallahatchie County on June 30, 1987. He was afforded a de novo hearing on the merits on July 14, 1987. From that decision this Court granted Meeks an expedited appeal decision of which we announced August 3, 1987. The point for the moment is that the judicial machinery of this state moved with considerable alacrity to the end that Meeks' claims could be heard fully and resolved prior to the Democratic Party Primary Election held Tuesday, August 4, 1987. The aggregate process afforded Meeks by the state and the Democratic Party Executive Committee exceeds his minimum due.

IV.
Meeks claims a further violation of his due process rights. He argues that the Circuit Court erred in refusing to hold Section 23-15-217 unconstitutional as "void for vagueness." Section 23-15-217, in pertinent part, reads as follows:
A commissioner of election of any county shall not be a candidate for any office at any election for which he may *566 have been elected or with reference to which he has acted as such; ... . except that he may be a candidate for the office of county elections commissioner.
Meeks characterizes this statute as "inartfully drafted, vague and ambiguously worded." He argues that it is unavailable as a criteria for denying him a place on the ballot because it is unconstitutionally vague.
The contours of the void for vagueness doctrine are reasonably familiar. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925) states:
[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process.
269 U.S. at 391, 46 S.Ct. at 127-28, 70 L.Ed. at 328. An unconstitutionally vague statute or regulation is unenforceable. A.B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 242, 45 S.Ct. 295, 298, 69 L.Ed. 589, 594-95 (1924). Jones v. City of Lubbock, 727 F.2d 364, 373 (5th Cir.1984) provides a further summary.
Most frequently, the vagueness standard has been applied to penal statutes. Federal Election Commission v. Lance, 635 F.2d 1132, 1142 (5th Cir.), cert. denied, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). Nevertheless, a civil statute may require or proscribe conduct so vague that it violates due process, Exxon Corp. v. Busbee, 644 F.2d 1030, 1033 (5th Cir.1981), cert. denied, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1982), although such a challenge contemplates a less exacting standard of review. E.G., Id. at 1033. In A.B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925), the Supreme Court stated the rationale for applying vagueness analysis to non-penal regulation:
It was not the criminal penalty that was held invalid, but the exaction of obedience to a rule or standard at all. Any other means of exaction, such as declaring the transaction unlawful or stripping a participant of his rights under it, was equally within the principle of those cases.
Id. at 373, quoting, A.B. Small Co., 267 U.S. at 239, 45 S.Ct. at 297. We have recently considered the doctrine in Transcontinental Gas Pipeline Co. v. State Oil & Gas Board, 457 So.2d 1298 (Miss. 1984), reversed on other grounds, 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986) where we stated:
A rule or standard is not objectionable merely because it is stated in general terms and is not susceptible of precise application. Familiar examples of such general standards abound in our law, e.g., negligence, unconscionability, fraud. We doubt anyone would seriously argue today that these standard are unconstitutionally vague.
457 So.2d at 1323.
Although its wording is general, we find the meaning of Section 23-15-217 reasonably clear. The statute provides two disqualifications upon a county election commissioner offering himself as a candidate for any other office. First, the commissioner is disqualified with respect to "any election for which he may have been elected." The elections commissioners are elected for four year terms. They are elected to act with respect to all general elections held within those terms. In addition, they have many other duties prescribed by statute. The first disqualification in Section 23-15-217 means that no person holding the office of elections commissioner may be a candidate for election to any other office at any election held or to be held during the four year term for which that person has been elected elections commissioner.
Second, an election commissioner is disqualified from seeking further office at any election "with reference to which he has acted" as an election commissioner. The meaning of this language seems quite apparent, although it overlaps the first disqualification and is arguably redundant. The commissioner may not be a candidate for any other office in any election with *567 respect to which he has taken any action in his official capacity. An exception to both disqualifications is that an incumbent election commissioner may be a candidate for reelection.
Recognizing the imprecision and ambiguity inherent in all words in all languages, we are nevertheless of the view that an ordinary person of common intelligence upon reading Section 23-15-217 can understand what is allowed and what is not. The assignment of error is denied.

V.

A.
Turning to the merits of the case we find that Meeks was indeed disqualified from seeking the office of Justice Court Judge in the August 4, 1987, Democratic Party primary election. First, it must be recognized that our focus should not be solely upon the primary election. Obviously, the successful candidate in that primary election will be the party nominee and a candidate for election to office at the November, 1987, general election. If an individual is disqualified from being a candidate in the general election, he is likewise disqualified from candidacy in the primary elections.
Meeks was elected to serve as Elections Commissioner for a four year term beginning in January of 1985. Section 23-15-217 provides that he is disqualified from being a candidate for any office (except for reelection to the office of county election commissioner) during that four year term. We do not read the statute to allow Meeks to shorten the period of his disqualification by resigning the office of election commissioner.[1] Any contrary intimation may be found in State Ex rel. District Attorney v. Jones, 177 Miss. 598, 171 So. 678 (1937) is expressly disapproved.
Secondly, the statute imposes a disqualification upon an election commissioner who has acted with respect to an election. Evidence below and argument here focused upon the statutory duty of the elections commissioners to purge the county voter roles in the early part of each year. See Miss. Code Ann. § 23-15-157 (Supp. 1987) [formerly Miss. Code Ann. § 23-5-81]. This statutorily imposed duty requires the commissioners to
carefully revise the registration books and poll books of the several voting precincts and ... erase therefrom the names of all persons erroneously thereon, or who have died, moved or become disqualified as electors for any cause; and ... register the names of all persons who have applied to be registered, ...
This statute mandated that Meeks and his fellow commissioners take action which could have significant effect on the 1987 primary and general elections. The primary elections would be affected in the sense that the registration and poll books prepared for and used in general elections are also used in primary elections in this state.
Meeks' response on this point is anomalous. He claims that he has not "acted" as an elections commissioner with respect to the 1987 elections because he didn't do what he was statutorily required to do under Section 23-15-157. Meeks says that in point of fact the commissioners did not meet and purge the registration and poll books. Indeed, the Circuit Court found as a fact that the Tallahatchie County Elections Commission "did not meet on the Tuesday after the second Monday in January 1987 or any time thereafter to purge the books, so to speak." The record reflects that the only meeting the commissioners held in 1987 was a meeting called by Meeks as Commission Chairman in February 1987. The Commission then considered the matter of attendance at an election seminar to be held in Natchez, Mississippi. *568 The commissioners were paid by Tallahatchie County for performing their duties at the February 1987 meeting.
In sum, candid application of Section 23-15-217 to Meeks renders him disqualified as a candidate for Justice Court Judge in the 1987 election  or for any other office (except election commissioner) in any other election to be held during the four year term which began in January, 1985. He is disqualified, notwithstanding that as election commissioner he may have in fact done nothing toward the preparation for and conduct of the 1987 elections.[2]

B.
The Attorney General has called our attention to the fact that, for a number of years, his office has issued written opinions to the effect that an elections commissioner may be a candidate for other offices during the term for which he was either appointed or elected, so long as he resigned as elections commissioner prior to taking any action with reference to the election in which he seeks to be a candidate. For the reasons explained above, that opinion was and is erroneous. We recognize, however, that there are any number of individuals, political parties and political subdivisions who have acted to their detriment in substantial reliance on such opinions. More specifically, our opinion in this case was formally released August 19, 1987. Primary elections had been held August 4, 1987, with candidates and others having proceeded in reliance on the Attorney General's view of the law. With the exception of today's case, we provide that our construction of Section 23-15-217 shall have no effect upon any elections held prior to January 1, 1988, but shall thereafter be wholly enforceable. See Frazier v. State By and Through Pittman, 504 So.2d 675, 706 (Miss. 1987); Alexander v. State By and Through Allain, 441 So.2d 1329, 1347 (Miss. 1983).
Appellant Meeks is in a different posture. He was told back in June of 1987 that he was ineligible as a candidate. He did not during the summer political season expend time and effort and financial resources in pursuit of elective office, as others have done. No essential unfairness is worked by applying our reading of Section 23-15-217 to Meeks' case. Moreover, application of the law declared to the case at bar is ordinarily thought essential to the process of adjudication. Cf. Pruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982).

VI.
Meeks finally urges that Section 23-15-217 unconstitutionally infringes on his fundamental right of access to the ballot. He implies a fundamental right to access to candidacy and that no restrictions could be or should be placed upon that access.
The Court in Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 516 (1983) in partially quoting Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) stated "Far from recognizing candidacy as a `fundamental right', we have held the existence of barriers to candidates access to the ballot `does not of itself compel close scrutiny.'" Section 23-15-217 is quite similar to the Texas constitutional provision considered by the Clements Court. There are no special burdens imposed on minority parties or independent candidates.
The Mississippi statute, as well as the Texas constitutional provisions, merely prohibits an individual from cutting short their current term of office to apply for a new one. The State has a legitimate state interest in preventing an election commissioner from seeking another office while he has control of the electors that shall vote for all the candidates. Little reflection is required to see the potential for mischief were an *569 elections commissioner allowed effective control over registration and poll books for, say, two years, then to resign and seek another elective office.
Perhaps more so than is the case with any other public official, the integrity of the office of Elections Commissioner must be totally beyond compromise or even perception of the possibility of compromise. The legislature has enacted that elections commissioners shall totally remove themselves from any taint or hint or suspicion of partnership. They must be aloof from partisan politics as much as judges, if not more so. For what is at stake is public confidence in our system of self government. By law, once Eddie Meeks or anyone else assumes the office of Elections Commissioner, he becomes obligated to stay out of any other electoral endeavor for the term of his office, period. If this seem harsh, it is certainly less so than the adverse impact upon the public interest if our people come to doubt the integrity of the system.
PETITION FOR REHEARING DENIED; OPINION MODIFIED; AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Meeks argues that he was advised by someone in the office of the Attorney General that, so long as he resigned the office of Elections Commissioner and so long as he had not in fact acted as an elections commissioner with respect to the 1987 elections, he would be eligible to run. Suffice it to say that Meeks never produced any written opinion of the Attorney General to this effect. The Attorney General, according to our understanding, gives opinions only in writing. Miss. Code Ann. § 7-5-25 (Supp. 1986). Even so, we would not be bound by any such opinion.
[2] We do not consider the alternative grounds found by the Circuit Court, to-wit: that Meeks had not yet tendered his resignation as Elections Commissioner at the time he filed his qualifying papers on May 14, 1987. The operative date upon which Meeks was required to be qualified to run in the Democratic Primary was June 5, 1987. He had effectively resigned prior to that date. Because we find Meeks disqualified by reference to Section 23-15-217, there is no reason to reach this additional ground.