DICKINSON, Presiding Justice,
for the Court:
¶ 1. The Motion to Recall the Mandate is granted, the Motion to Alter or Amend the Judgment or For Other Necessary Relief is granted in part, this Court’s prior opinion is withdrawn, this opinion is substituted in its place, and the remainder of the Motion to Alter or Amend the Judgment or For Other Necessary Relief is stricken.
¶ 2. Dr. Willie Wilson timely submitted his petition and qualification papers to the Mississippi State Democratic Executive Committee (the “Party”), to run for President in the 2016 Democratic primary. The Party rejected Dr. Wilson’s petition but-later reconsidered and requested the Mississippi Secretary of State to place Dr. Wilson’s name on the primary ballot. But, because absentee and overseas military voting had already begun, the Secretary of State refused. The Circuit Court of Hinds County refused to grant Dr. Wilson an injunction and he. appealed. Under the particular facts and circumstances of this case, we find that Dr. Wilson’s due process rights were, violated, so we reverse and render.
FACTS AND PROCEDURAL HISTORY

The Presidential Primary Ballot Process

¶ 3. The names of individuals who wish to participate in a political party’s presidential preference primary election are placed on the ballot in two ways. First, Mississippi law requires the Secretary of State to include all candidates who are “generally recognized throughout" the United States or Mississippi as [candidates] for the nomination of President of the United States.”[1] The Secretary must announce those candidates on or before December 15 in the year preceding the presidential election, and he may continue *372 to add names thereafter.[2]
¶ 4. Others who wish their names to appear on the primary ballots may file petitions with that party’s state executive committee between January 1 and January 15 of the presidential election year.[3] Their petitions must be
signed by a total of not less than five hundred (500) qualified electors of the state, or ... signed by not less than one hundred (100) qualified electors of each congressional district of the state.[4]
Then, no more than two working days following the qualifying deadline — this year by January 19 — the party must submit the names of qualified candidates to the Secretary of State to be added to the State’s electronic Statewide Election Management System.[5] Rather than notifying Dr. Wilson prior to the January 19 deadline, the Party waited until 1:04 p.m. on January 20 — one day after the deadline had passéd — to notify him that his petition had been rejected. So, strictly applying the statutes without reading into them any grace period, the Party did not inform Dr. Wilson that he had not qualified until after the statutory deadline to submit his name had passed and he had lost the opportunity to timely contest the Party’s decision. .
¶ 5. Three days later, absentee voting began, and the Secretary of State was required by federal law to have mailed ballots to members of the military overseas by that time.[6] So, even had the Secretary. of State ignored the January 19 deadline — again, for which Mississippi law provides no exception — Dr. Wilson had only from 1:04 p.m. on Wednesday, January 20, to some time,on Friday, January 22, the day ballots were prepared and printed for distribution and mailing the following day, to have the Party correct its mistake and notify the Secretary of State that his name should be included on the ballot. It is this two-day window of time that is the focus of the case before us today.
Dr. Wilson’s Efforts to Have His Name Appear on the Democrátic Primary Ballot
¶ 6. Dr. Wilson’s name was not among those placed on the ballot by the Secretary of State as a candidate generally recognized throughout the United States or Mississippi. So, on January 14, 2016, he timely filed with the Mississippi Democratic Party a petition to have his name added to the ballot. His petition complied in every respect with Mississippi law. But on January 19 — the statutory deadline for the Party to submit names of qualified candidates to the Secretary of State — the Party informed the Secretary of State that Dr. Wilson had not qualified.[7] Rather than informing Dr. Wilson that same day that he had been rejected, the; Party wait *373 ed until 1:04 p.m. on the following day— January 20 — to advise him .that his petition had been rejected.
¶ 7. The very next day — Thursday—Dr. Wilson (a resident of Chicago, Illinois) located and retained an attorney who appealed to the Party to reconsider its incorrect decision. The party admitted its mistake to Dr. Wilson’s attorney on Monday, ' January 25 — three days after the deadline to inform the-Secretary of State to-halt the presses and add'Dr. Wilson’s name to the ballot.
¶ 8. Although the Party notified Dr. Wilson of its mistake, it did not notify the Secretary of State, so on Wednesday, January 27 — eight days after the Secretary of State’s deadline, and .five days after the deadline to correct mistakes — Dr. Wilson’s attorney threatened a lawsuit, and the Party responded by hand-delivering -a letter to the Secretary of State, stating that Dr. Wilson had submitted a qualifying petition and asking that his name be included on the ballot. As a result of his successful appeal to the Party to change its decision, Dr. Wilson’s counsel also emailed the Secretary of State’s office that day asking that his name be added to the ballot.
¶ 9. Two days later — January 29 — the Secretary of State’s office informed the Party that it would not add Dr. Wilson’s name to the ballot because the Party had failed to submit his name by the January 19 deadline, as required by law,[8] and because sample ballots had been issued and absentee voting had begun. .

The Litigation

¶ 10. That afternoon, Dr. Wilson filed a complaint in the Hinds County Circuit Court, seeking a writ of mandamus, as well as declaratory and injunctive relief, ordering the Secretary of State to add his name to the ballot. Dr. Wilson also filed a motion for preliminary injunction, requesting the same relief and asserting that his name constitutionally could hot be excluded from'the ballot.[9] On February 1, Dr. Wilson filed an amended complaint, adding his argument that’ his constitutional rights to due process, freedom of speech, and freedom of association were violated. The Secretary of State responded, arguing that state and federal statutory deadlines precluded the Secretary of State from adding Dr. Wilson’s name to the ballot.
¶ 11. On February 1, the parties appeared for a hearing in the circuit court on Dr. Wilson’s motion for preliminary injunction. At the end of the hearing, the circuit judge stated that he would-email his ruling that afternpon with a-written order to, follow. Later that afternoon he sent the parties an email stating:
The Court, after a review of this matter, finds that.the Motion for Preliminary Injunction is not well taken and will be denied. Voting in the Democratic presi.dential primary began op January 23, 2016. Prior to initializing the voting process, the Secretary of State was advised by the Democratic party that. Dr. Wilson did not qualify. Therefore, the Secretary of State, in accordance with statutory law, finalized ballots and, on *374 January 23, voting began. It is too late to repeat the process. Any such change in this process would be in violation.of the statutory deadlines set forth in Mississippi and federal law. The plaintiff has not met the requirements for a preliminary injunction and the same is hereby denied.
¶ 12. So the next day — February 2— Dr. Wilson filed a notice of appeal, and the following day — February 3 — he filed a “Petition for Expedited and Emergency Consideration of Appeal, For Permission to Appeal of [sic] Interlocutory Order, and for Mandamus Adding Appellant’s Name to the Ballot.” This petition argued that the failure to add his name to the. ballot violated both his constitutional rights and those of the signatories to his, petition. On February 4, the circuit judge entered his written order, repeating his ruling from the email.
¶ 13. Dr. Wilson’s appeal of the circuit court’s order denying his motion for a preliminary injunction technically is interlocutory in nature. But applying our precedent in Gibson v. Manuel,[10] we find the circuit judge’s order effectively “leaves the parties with little else to litigate” in the circuit court. So we grant Dr. Wilson’s petition for interlocutory appeal, consolidate the records from the direct and interlocutory appeals, reverse and render judgment in Dr. Wilson’s favor, order that the Secretary of State add Dr; Wilson’s name to Mississippi’s electronic Statewide Election Management System, and dismiss the direct appeal as moot.
ANALYSIS
¶ 14. Dr. Wilson argues that, because he met the statutory requirements to qualify to run in the Mississippi Democratic Presidential Preference Primary. Election, his due process and First Amendment rights — as well as those of the signatories to his qualifying petition — have been violated by the exclusion of his name from the ballot. We conclude -that the Party’s failure to.timely inform Dr. Wilson that it found his petition insufficient and to timely respond to his attorney’s request to reconsider, coupled with the January 19 and 23 statutory deadlines to submit names and send ballots to overseas and military voters, denied Dr. Wilson a meaningful opportunity to be heard by the Party and deprived him of due process of law.
¶ 15. In Meeks v. Tallahatchie County, we considered a political candidate’s legal challenge to a political party’s determination that he had not qualified to run for office.[11] There, Eddie Meeks sought the Democratic Party’s nomination for justice court judge in Tallahatchie County.[12] At the time, Meeks served as Chairman of the Tallahatchie County Elections Commission.[13] At a meeting to consider candidate certification, the Tallahatchie County Democratic Party Elections Committee determined that Meeks was ineligible to run and refused to certify him as a candidate.[14]
¶ 16. Meeks, upon hearing that the Party had voted to deny his certification, appeared before the committee and argued that he could be certifíéd as a candidáte.[15] The Party stood by its decision, and Meeks sought an order from the Tallahatchie County Circuit Court to have his name *375 placed on the ballot.[16] The circuit judge denied relief and Meeks appealed.[17]
¶ 17. On appeal, in addressing Meeks’s argument that the Party had denied him due process of law, we held:
Without doubt, election to public office is a public function and any integral part of that function must.be constitutional. The nomination process may appear to be more a private than a governmental function because it is conducted by political parties. Appearances notwithstanding, our law recognizes that the selection of party nominees by primary elections is an integral part of the entire election process.... [T]he primary election process is sufficiently state action that persons affected by it and participating in it have available due process protections.[18]
¶ 18. Applying that principle, we held that: [W]hen one files the proper qualifying papers and pays the requisite filing fee to become a candidate for public office, neither the state nor, in the case of a primary election, a political party may arbitrarily or capriciously deprive him or her of a place on the ballot. [The candidate is] entitled to due process protections on two levels. First, he [is] entitled to the opportunity to be heard. Second, he [is] entitled that his name not be finally stricken from the ballot except that result be required by law.[19]
¶ 19. And we made it clear that:
[w]here the executive committee decides that -a person is not eligible, however, and where that person wishes to be heard regarding the matter, the executive committee, as a matter of due process, is required to allow the disqualified candidate a reasonable opportunity to present his case.[20]
¶ 20. Meeks instructs us on Dr. Wilson’s claim in two ways. First, because the Party initially determined his petition did not qualify him to run in the primary election, Méeks obligated the Party to provide Dr. Wilson “a reasonable opportunity to present his case.”[21] That did not occur. And while the Party ultimately listened to Dr. Wilson’s attorney and reversed its decision, it did so too late to provide meaningful due process protection.
¶ 21. Granting düe process after it is too late is not due process. As the United States Supreme Court has explained, “[i]f the. right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at. a. time when the deprivation can still be prevented.”[22] Here, as a result of, extremely tight statutory deadlines and the Party’s, failure to timely reach a correct decision, Dr. Wilson was provided no such opportunity.
¶ 22. Dr. Wilson timely filed his petition one day early, on January 14. Under Section 23-15-296, the Mississippi Democratic Party had until Monday, Janu *376 ary 19, to submit Dr. Wilson’s name to the Secretary of State ás a qualified candidate. Prior to that day, the Party provided Dr. Wilson no indication that it would deny his petition. On January 19, the Party informed the Secretary of State’s office that one candidate — Roque De La Fuente — had qualified by petition, but that Dr. Wilson had not. The Party waited until 1:04 p.m. the following day to inform Dr. Wilson. At this point,.when the Party first informed Dr. Wilson that his petition had been - deemed inadequate, the statutory deadline to submit names for the ballot already had passed. In other words, Dr. Wilson was not “granted [an opportunity to be heard] at a time when the deprivation can still be prevented” because the Party did not inform Dr. Wilson that he had not qualified until after the statutory deadline to submit his name to the Secretary of State had .passed.
¶ 23. Even then, Dr. Wilson took immediate action to correct the Party’s error by hiring an attorney who, on January 22, presented his case to the Party. But rather than 'immediately reviewing the matter and reversing its decision in time to have the ballots corrected before mailing on January 23,[23] the Party once again denied Dr. Wilson a meaningful opportunity to be heard. The Party waited until Monday, January 25 — after the ballots were mailed and absentee voting had begun' — to admit its mistake to Dr. Wilson’s attorney. And even then, the Party waited two more days to inform the Secretary of State.
¶ 24. So, in sum, Meeks required the Party to provide Dr. Wilson a meaningful opportunity to present his case. And in order for the opportunity to be meaningful, it must have occurred- when the harm — leaving Dr. Wilson off the ballot— still could be remedied. The Party’s delay, coupled with the January 19 and 23 deadlines, denied Dr. Wilson that chance. In other words, under Meeks, Dr. Wilson was denied due process of law.
¶ 25, But Meeks is instructive for a second reason. At oral argument, the attorney for the' Secretary of State argued that when Dr. Wilson learned the Party had rejected his petition on Wednesday afternoon, he had until Friday afternoon to go into the court system; and that by not doing so, he waived any remedy to the violation of ‘his constitutional rights.[24] Mississippi law holds otherwise.
¶ 26. As explained above, .Meeks also involved a political, party’s determination that a candidate had not qualified for the primary.[25] There, discussing the candidate’s challenge, this Court held:
Where the executive committee decides that a person is not eligible, however, and where that person wishes to be heard regarding the matter, the executive committee, as a matter of due process, is required to allow the disqualified *377 candidate a reasonable opportunity to present his case.[26]
¶ 27. We certainly cannot now fault Dr. Wilson for following the very procedure that we articulated in Meeks. Also, Sections 23-15-923 and 23-15-961 — both of which govern election contests and an opponent’s challenge to a political party’s eligibility determinations — require that a contesting candidate seek recourse with the party executive committee béfore seeking a judicial remedy. Section 23-15-1087 states that “[e]xcept as otherwise provided in this chapter, the laws regulating primary and general elections shall in so far as practical apply to and govern presidential preference primary elections.” So, both caselaw and statutes required Dr. Wilson first to seek a remedy from the Party. He did so but was denied a meaningful opportunity to be heard.
¶ 28. Remarkably, the dissenting Justices — while conceding that Dr. Wilson’s rights were violated — would provide him relief only had he ignored our precedent in Meeks and proceeded directly into the courts, or sought a “formal hearing” with the Party. Chief Justice Waller criticizes Dr. Wilson’s counsel’s efforts to persuade the Party to change its decision, labeling his attempts to “negotiate” and “work things out” as “haggling.”[27] We find this criticism unjustified, particularly in light of counsel’s immediate and concerted efforts to persuade the Party to change its decision in the two-day snippet of time available to him,
¶ 29, Meeks includes no requirement that counsel seek a “formal hearing.” , Indeed, the due process right addressed in Meeks is not the right to procedural formality, but rather the right to be heard in a meaningful way[28] at a time when redress can be provided.[29] Dr. Wilson sought the opportunity to be heard — exactly as this Court required in Meeks. As soon as he knew the Party had rejected his petition, he retained an.attorney who immediately sought relief, first from, the Party, and then from the courts.
¶ 30. Further, Chief Justice Waller’s dissent requirements of Dr. Wilson during the two-day period between January 20 and January 22 border on optimistic fantasy. To suggest that Dr. Wilson’s counsel was less than diligent — negligent, really— for not doing more than he did during that two-day time frame, strikes us as unfair for several reasons.
¶ 31. First, the Party’s actions and the statutory procedures for securing a place on the primary ballot provided Dr. Wilson no chance to do so. The deadline for the Party to notify the Secretary of State of the names of qualified candidates was January 19, and that deadline passed before Dr. Wilson even received notice that the Party had rejected his petition. Mississippi statutory law provides no exception for the January 19 deadline. So no statutory *378 remedy was available for'Dr. Wilson — once he was rejected — ever to get on the ballot.
¶ 32. The dissents’ views that Dr. Wilson’s counsel should have ignored Meeks and gone directly into the courts ignore the practical reality that, even had Dr. Wilson filed his complaint on January 20, he still would not have been on the ballot by January 23. Dr. Wilson did not learn of his rejection until 1:04 p.m. on January 20. So, between 1:04 p.m. on Wednesday afternoon and sometime on Friday — in time to get to the' printer — Dr:' Wilson, who lives in Chicago, would have had to employ Mississippi counsel, file a complaint in the Hinds County Circuit Court, participate in a hearing, obtain the trial-court ruling, file an appeal, and have his appeal heard and decided by this Court. No member of this Court, nor the bench and bar at large, can believe this could have happened. So, even had Dr. Wilson skipped any attempt to have the Party change its decision and gone directly into the courts, the ballots still would have been mailed out on January 23 without his name, and we would be right where we are today,
¶ 33. The practical result of the dissenting justices’ view of the requirements for a wrongfully rejected candidate to seek and obtain relief for a violation of his or her constitutional rights, would be effectively granting the power to political parties to prevent any person they desire from qualifying as a candidate.
¶ 34. We note that the dissent by Chief Justice Waller repeatedly states that “Dr. Willie Wilson waited until January 29, 2016, to raise a formal objection to the Secretary of State’s refusal to place his name on the Democratic primary ballot.” Since January 29 was the very day the Secretary of State refused to put Dr. Wilson’s name on the ballot, we fail to see how he could have objected earlier.
¶ 35. The dissents’ criticism of Dr. Wilson for not suing the Democratic Party deserves little attention.. The Democratic Party could afford Dr. Wilson no remedy. It already had agreed that Dr. Wilson’s name should be on the ballot and had asked the Secretary of State — who controlled the electronic Statewide Election Management System — to add Dr. Wilson’s name. Dr. Wilson’s constitutional rights were violated, and he was entitled to 'file suit against the party in a position to grant him relief.
¶ 36. This is not unusual. For instance, in Gideon v. Wainwright—a landmark constitutional-law. decision — Circuit Judge Robert McCrary violated Clarence Earl Gideon’s constitutional rights by refusing to appoint him counsel. Gideon sought a remedy for the constitutional violation— not by suing Judge McCrary, who could provide him no remedy — but by suing the party who was in a position to provide him a remedy for the constitutional violation.[30]
¶ 37. And as a final note, we point out that the defendant in Gideon — the Secretary of the Florida Department of Corrections — was a proper defendant who lost in the litigation, even though he had followed all Florida statutes and United States Supreme Court precedent. So because only the Secretáry of State could provide Dr. Wilson a remedy for the constitutional violation, we must reject the dissents’ suggestion that he should have sued the Democratic Party.
¶ 38, Having concluded that Dr. Wilson was denied due.process, we now must consider the appropriate remedy. In both this Court and the circuit court, Dr. Wilson has asked that the Secretary of State to be ordered to add his name to the *379 State’s electronic Statewide Election Management System. He has waived any right to challenge any ballot already-printed or issued.
¶ 39. The Secretary of State, contending that we should grant no relief, argues that federal law prohibits inconsistent ballots, so this Court cannot honor Dr. Wilson’s waiver, and that -federal statutory deadlines preclude issuing new absentee ballots at this time. We conclude that neither federal nor state law precludes us from honoring Dr. Wilson’s waiver.
¶ 40. As a general matter, only injunc-tive relief can remedy Dr; Wilson’s injury. For instance, in Wallace v. Election Commission of the Town of Edwards, this Court found that the appropriate remedy when a qualified candidate was excluded from a ballot was a writ of mandamus ordering that his name be added to the ballot.[31] Here, the dispute centers on whether federal law precludes this Court from applying that remedy.
¶ 41. The Secretary of State argues that the United States Court of Appeals for the Fourth Circuit, in Perry v. Judd, held that federal law — specifically United States Code Title 52, Section 20302 — requires states wishing to add new candidates to the ballot to issue all-new absentee ballots to overseas and military voters.[32] We do not agree. Section 20302 was not at issue in Perry. That statute was mentioned by the court when it explained that it considered the case on an expedited basis because the forty-five-day deadline to mail absentee ballots under Section 20302 soon would arrive.[33]
¶ 42. While the Fourth Circuit did state that, in that case, the State would be required to issue new absentee ballots, it did not analyze Section 20302, nor did it cite any opinion discussing or relying on Section 20302.[34] We cannot agree that the Fourth Circuit found that Section 20302 required new absentee ballots in the ease before us today.
¶ 43. We are more persuaded by the United States District Court for the Middle District of Pennsylvania in United States v. Pennsylvania,[35] There, Ralph Nader and Peter Miguel Camejo had been candidates for President and Vice President of the United States when Pennsylvania prepared and mailed absentee ballots under Section 20302.[36] But their qualifications to run were subject to a subsequent legal, challenge, and their names were ordered off the ballot.[37] . The United States Department of Justice then sued Pennsylvania, seeking an order for the State to issue new ballots, without Nader’s and Ca-mejo’s names, to all voters who received ballots under Section 20302.[38] The United States District Court for the Middle District of Pennsylvania denied the request, explaining that:
The Government contends that the fact that UOCAVA[39] protected individuals have received ballots including the *380 names'of Nader and Camejo rather than the final ballot as certified on October 13, 2004, that excludes those names represents an UOCAVA violation. As the Commonwealth Defendants note, .this fact does not ipso facto support a finding that the Commonwealth is in violation of UOCAVA. As UOCAVA does hot govern ballot content, the burden is on Plaintiff to establish that the alleged ballot' defect undermines the right of UOCAVA voters to cast their ballots.[40]
¶ 44. We agree with the assessment by the district court that Section 20302 does not “govern ballot" content.” Nowhere does the statute require that subsequent ballots be issued when a ballot change occurs. Rather, the statute focuses on the right of voters timely to receive and submit ballots.[41]
¶ 45. In fact, the District Court focused its inquiry on the fact that “UOCAVA voters will, like all other absentee voters'in Pennsylvania, vote the ballot that whs legally correct at the time they requested, and were provided absentee ballots.”[42] It also noted' that theré was “no indication that UOCAVA voters irreparably would be harmed by easting the same ballot as every other absentee voter registered in' the state who received a similar ballot.”[43] We craft a similar remedy here by honoring Dr. Wilson’s waiver and ordering that his name be included in the electronic Statewide Election Management System so .that it may be made avdilable through electronic voting machines on March 8.
CONCLUSION
¶ 46. We grant Dr. Wilson’s petition for interlocutory appeal and order the Secretary of State to add Dr. Wilson’s name to the electronic Statewide Election Management System, so that it may be made available through electronic voting machines for the Democratic primary on March 8. We also order that any voting precincts using paper ballots- for the March 8 election prepare ballots that include Dr. Wilson as a candidate. However, Dr. Wilson’s name, is not required to be added to any absentee ballots prepared or issued to voters. Finally, we accept Dr. Wilson’s express waiver of any right to challenge absentee ballots going forward. No motion for rehearing, will be allowed .and the Clerk-of Court-is directed immediately to issue the mandate.
¶ 47. REVERSED AND RENDERED.
RANDOLPH, P.J., KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR. WALLER, C.J., DISSENTS.WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND MAXWELL, JJ. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J.

. Miss.Code. Ann. § 23-15-1089 (Rev.2015).

. Id.

. Miss.Code Ann. § 23-15-1093 (Rev.2015).

. Id.

. Miss.Code Ann. § 23-15-296 (Rev.2015).

. “Each State shall ... transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter ... in the case in which the request is received at least 45 days before an election for Federal office, not later than 45 days before the election," 52 U.S.C.A. § 20302(a)(8)(A).

. Although Dr. Wilson’s petition contained more than double the 500 signatures required by statute, the Party rejected it because it did not include 100 signatures from each congressional district, as required by the Party’s Delegate Selection Plan — a requirement that contradicted Mississippi law and. had been rejected by an Attorney General opinion on June 5, 2015. Miss. Op. Att’y Gen., No. 2015-00158, 2015 WL 4394179 (June 5, 2015).

. Miss.Code Ann. § 23-15-296.

. Dr. Wilson has expressly waived any claim that his name should be added to absentee ballots. In his petition for interlocutory appeal, Dr. Wilson stated "[t]he Appellant waives any right he might have to challenge any military or absentee ballots that have been cast or have been mailed to be completed and returned to the county circuit clerks, on account of his name not appearing on such ballots.” At oral argument, Dr. Wilson’s counsel reiterated that Dr. Wilson seeks an order that the Secretary of State add his name to tire electronic Statewide Election Management System,

. Gibson v. Manuel, 534 So.2d 199, 200-1 (Miss.1988).

. Meeks v. Tallahatchie Cty., 513 So.2d 563 (Miss.1987).

. Id. at 564.

. Id.

. Id.

. Id.

. Id.

. Id.

. Id. (citing Fanning v. State, 497 So.2d 70, 72 (Miss.1986); Miss. State Bd. of Election Comm'rs v. Meredith, 301 So.2d 571, 573 (Miss.1974); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S, 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)).

. Meeks, 513 So.2d at 565.

. Id.

. Id.

. Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (emphasis added).

. Once again, this assumes the Secretary of State would have ignored the January 19 deadline, which no Mississippi law permits him to do. Under Mississippi law, Dr. Wilson was deprived of due process when the January 19 deadline passed without his being provided an opportunity to present his case. We discuss Dr. Wilson’s efforts after January 19 simply to illustrate that he diligently attempted to litigate his case as soon as the Party provided him an opportunity to do so.

. Although it is not dispositive in this case, we note here that it would require enormous optimism for one to conclude that Dr. Wilson (a Chicago resident) could hire Mississippi counsel who, in turn, could then research the law, gather evidence, draft pleadings, obtain a hearing .and decision from the Hinds County Circuit Court and a reversal from -this Court, all in approximately-two days.

. Meeks, 513 So.2d at 563.

. Id. at 565.

. Dr. Wilson’s attempts to “haggle” with the Party were hardly "futile,” as characterized by Chief Justice Waller’s dissent.. Dr, Wilson successfully persuaded the Party to change its decision.

. Id. (“True, the hearing afforded Meeks was somewhat unorthodox in the sense that Meeks informally got word that the Committee was meeting, had acted negatively upon his candidacy, and that he then went uninvited to the meeting. No matter. What is important— indeed, outcome determinative — is that Meeks appeared before the Committee and fully presented his views and his case.”).

. Fuentes, 407 U.S. at 81, 92 S.Ct. 1983 ("If the right to notice and a hearing is .to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.") (emphasis added).

. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

. Wallace v. Election Comm’n of the Town of Edwards, 118 So.3d 568, 570 (Miss.2013).

. Perry v. Judd, 471 Fed.Appx. 219 (4th Cir.2012). See 52 U.S.C. §. 20302 (2009)

. Id. at 220.

. Id. at 227.

. United States v. Pennsylvania, 2004 WL 2384999 (M.D.Penn. Oct. 20, 2004).

. Id. at *1.

. Id.

. Id.

. "UOCAVA” stands for "Uniformed and Overseas Citizens Absentee Voting Act.” See 52 U.S.C. § 20302.

. Id. at *4.

. 52 U.S.C. § 20302.

. United States v. Pennsylvania, 2004 WL 2384999, at *4 (emphasis added).

. Id.