DIAZ, J.,
for the court.
¶ 1. In the November 7, 2000, election for Election Commissioner, District Five, Kemper County, Mississippi, candidate Schumpert McIntosh received 512 votes and candidate Barbara Sanders received 411 votes. On November 27, 2000, Sanders filed a Petition in Contest of Election alleging that McIntosh was not qualified to run for the position of Election Commissioner, District Five, Kemper County, Mississippi, because he was not a resident/elector of Kemper County and District Five.
¶ 2. In response, McIntosh filed his answer and defenses, along with a motion to dismiss and a motion to strike. These motions were denied, and a trial was held in the Circuit Court of Kemper County, Circuit Judge Robert W. Bailey presiding. The jury was presented with the question of whether McIntosh was a resident of Kemper County. Based on its determination that McIntosh was a resident of Laud-erdale County, the jury voted, 11-1, that McIntosh be disqualified as a candidate. On May 4, 2001, the final judgment was entered declaring Sanders the winning candidate. The trial judge denied McIntosh’s motion for special election, motion to alter or amend judgment, and motion for JNOV or for a new trial. McIntosh now appeals raising the following two issues:
I. WHETHER THE GENERAL STATUTORY APPEAL METHODS UNDER MISS. CODE ANN. § 11-51-75 OR § 11-51-93 ARE APPLICABLE TO SANDERS’S PETITION CONTESTING McINTOSH’S QUALIFICATION?
II. WHETHER THE TRIAL COURT WAS REQUIRED TO ORDER A SPECIAL ELECTION UPON THE DISQUALIFICATION of mcintosh?

FACTS

¶ 3. On September 12, 2000, McIntosh filed a statement of candidacy with the Chancery Clerk of Kemper County, Mississippi, for the position of county election commissioner, District Five. On September 18, 2000, the Board of Supervisors of Kemper County (KCBS) considered the petitions of candidacy of 7 individuals for the 5 positions of county election commissioner. At this time, according to Sanders, the KCBS made no verification of any candidate’s residency or other qualifications as required by Miss.Code Ann. § 23-15-213 (2001), and the petitions were summarily approved for placement on the November 7, 2000, general election ballot. McIntosh and Sanders were the only candidates for District 5.
¶ 4. In her petition in contest of the election, Sanders contended that McIntosh was truly a resident of and domiciliary of Lauderdale County, Mississippi. According to Sanders, several documents gathered in response to discovery requests indicated that McIntosh resided in Lauderdale County for a number of years. The jury considered these documents when it voted to disqualify McIntosh. Any question regarding McIntosh’s residency is not at issue before this Court.
*1113 ¶ 5. Sanders also contended that, unlike most candidates, those for election commissioner cannot challenge the qualification of another candidate prior to the general election, due to the lack of any statutory process outlining such a pre-election appeal. Therefore, Sanders had to resort to the post-election remedy of Miss.Code Ann. § 23-15-951 (2001), the statute for contesting general elections which states:
a person desiring to contest the election of another person returned as elected to any office within any county, may, within twenty (20) days after the election, file a petition in the office of the clerk of the circuit court of the county, setting forth the grounds upon which the election is contested; and the clerk shall thereupon issue a summons to the party whose election is contested, returnable to the next term of the court, which summons shall be served as in other cases; and the court shall, at the first term, cause an issue to be made up and tried by a jury, and the verdict of the jury shall find the person having the greatest number of legal votes at the election.
¶ 6. On the other hand, McIntosh argued, in his motion to dismiss, that the only avenue available to Sanders was to file an appeal from the KCBS’ September 18, 2000, verification of the names for candidacy. McIntosh contends that the proper method of appeal was by way of a bill exceptions under Miss.Code Ann. § 11-51-75 (2002) or by way of certiorari under Miss.Code Ann. § 11-51-93 (2002) and Miss.Code Ann. § 11-51-95 (2002). The trial judge disagreed with McIntosh, finding that the only means by which election commission candidates and school board candidates could challenge the qualification of candidates was through Miss.Code Ann. § 23-15-951.

DISCUSSION

I. WHETHER THE GENERAL STATUTORY APPEAL METHODS UNDER MISS. CODE ANN. § 11-51-75 OR § 11-51-93 ARE APPLICABLE TO SANDERS’S PETITION CONTESTING McIN-TOSH’S QUALIFICATION?
¶7. McIntosh- contends that Sanders failed to perfect the proper statutory appeal and that the circuit court was without jurisdiction to grant the relief sought by Sanders.
¶ 8. First, McIntosh points out that the issue in this case does not turn on the legality of the votes, rather the issue turns on McIntosh’s qualification to enter the election. This is an important point because, according to McIntosh, Miss.Code Ann. § 23-15-951 only applies to voter qualifications and the determination of whether ballots cast and counted are legal/illegal votes. McIntosh cites Misso v. Oliver, 666 So.2d 1366, 1375 (Miss.1996), to support his argument that Miss.Code Ann. § 23-15-951 is not the proper statute to challenge candidate qualification. In Mis-so, this Court ruled that the board of commissioners did not have the authority to open sealed ballots, and as for issues of voter qualification and the propriety of the decision of the election managers, Miss. Code Ann. § 23-15-951 would be the appropriate statute. Misso, 666 So.2d at 1375.
¶ 9. McIntosh’s argument that Miss.Code Ann. § 23-15-951 only applies to voter qualification is without merit. The statute simply does not state that the only contest to an election is whether the votes were legally cast. A complete reading of the statute reveals that a contest of the qualification of a candidate can properly be made under the said statute, with the *1114 exception being a “person desiring to contest the qualifications of a candidate for nomination in a political party primary election shall comply with the provisions of Section 23-15-961.” Id., or “a person desiring to contest the election of another person returned as elected to any seat in the Mississippi Legislature shall comply with the provisions of Section 23-15-955.” Miss.Code Ann. § 23-15-951.
¶ 10. McIntosh agrees with Sanders that Miss.Code Ann. § 23-15-963 is not applicable, since McIntosh did not qualify pursuant to Miss.Code Ann. § 23-15-359 (2001). Candidates for election commissioner can only qualify pursuant to Miss. Code Ann. § 23-15-213 (2001). Miss.Code Ann. § 23-15-963, which governs challenges to qualifications of candidates for other offices, only applies for those candidates who qualify under Miss.Code Ann. § 23-15-359. Although not applicable in the present case, Sanders emphasizes that, pursuant to Miss.Code Ann. § 23-15-963(7), after the election has ended, the qualifications of any person who assumes an elective office “may be contested as otherwise proved by law.” Sanders states that there are no like provisions for those candidates who qualify under other statutes.
¶ 11. McIntosh and Sanders agree that pursuant to Miss.Code Ann. § 23-15-213 (2001), the county board of supervisors has the duty to determine whose name is entitled to appear on a county general election ballot as a candidate for election commissioner. According to Miss.Code Ann. § 23-15-213, “the president of the board shall verify that such candidate is a resident of the supervisors district in which he seeks election and that such candidate is otherwise qualified as provided by law.”
¶ 12. McIntosh states that this Court has held that in determining the qualification of a candidate, the election commission plays a quasi-judicial role. Misso, 666 So.2d at 1374. Therefore, it is the board of election commissioners’ duty to consider the legality and sufficiency of a petition that seeks to place the candidate’s name on a ballot. State ex rel. Rice v. Dillon, 197 Miss. 504, 19 So.2d 918, 920 (1944). The board of supervisors takes on the role of the board of election commissioners when the election commissioners themselves run for election. Miss.Code Ann. § 23-15-213.
¶ 13. Sanders argues that McIntosh improperly attempts to focus this case as an appeal of the Board’s conduct on September 18, 2000, and as such McIntosh contends that appeals procedures from the actions of supervisors controls this litigation. Sanders points out that this case involves a contest of the general election of November 7, 2000, in which an unqualified nonresident candidate was certified as the winning candidate.
¶ 14. As explained in the discussion above, the Legislature enacted Miss.Code Ann. § 23-15-963 to govern challenges of a candidate’s qualifications prior to the general election. Since Miss.Code Ann. § 23-15-963 does not apply, Sanders argues that the only other mechanism for such a challenge by candidates for election commissioner is Miss.Code Ann. § 23-15-951. Under the terms of this statute, a person contesting the election of another “may, within twenty (20) days after the election, file a petition in the office of the circuit clerk of the county, setting forth the grounds upon which the election is contested”, and the jury’s verdict “shall find the person having the greatest number of legal votes at the election.” Id.
¶ 15. Under the typical election contest, Miss.Code Ann. § 23-15-963 calls for a petition to be filed after the primary but before the general election and within 31 days of the primary election. Thus, in a *1115 typical election contest, the qualification of a candidate may be determined prior to the election.
¶ 16. The procedure for election commissioners differs from the typical election. Election commissioners must file their applications for candidacy sixty days prior to the election. Miss.Code Ann. § 23-15-213. The Board of Supervisors is called upon to act as the election commission and the candidates qualify through them. Miss.Code Ann. § 23-15-217.
¶ 17. McIntosh contends that those statutes which apply to actions of the Board of Supervisors control this matter. However, we disagree. The board was not acting as the Board of Supervisors, it was acting as the election commission. This Court has stated that whenever there are two statutes that address the same subject matter, the specific statute will control over the general one. Wilbourn v. Hobson, 608 So.2d 1187, 1191 (Miss.1992). The Mississippi Election Code, Miss.Code Ann. §§ 23-15-1 to -1111(2001 & Supp. 2002), specifically addresses qualifications of candidates and contests of elections. The appeal provisions in Miss.Code Ann. § 11-51-75 and in § 11-51-93 are general laws. See Lenoir v. Madison County, 641 So.2d 1124, 1129 (Miss.1994).
¶ 18. Furthermore, cases cited by McIntosh that involved the filing of a bill of exceptions only involve appeals to the circuit court from actions of local officials, acting in their capacity as local officials. Newell v. Jones County, 731 So.2d 580 (Miss.1999); Moore v. Sanders, 569 So.2d 1148 (Miss.1990). In the case sub judice, the board of supervisors acted as election commissioners, not as the board of supervisors.
¶ 19. Because there is a specific statute that governs election contests, McIntosh’s arguments are without merit.
II. WHETHER THE TRIAL COURT WAS REQUIRED TO ORDER A SPECIAL ELECTION UPON THE DISQUALIFICATION OF McIntosh?
¶ 20. Sanders argues that the jury’s decision in this particular case resulted in the race becoming an uncontested election. McIntosh, on the other hand, argues that when the majority of votes are thrown out, as they were in this case, a special election is required, regardless of the number of remaining candidates.
¶ 21. McIntosh relies on cases which have held that where a particular percentage of votes become invalid due to a disqualification of one of the candidates, a special election is required. In Stringer v. Lucas, 608 So.2d 1351, 1356 (Miss.1992), this Court ordered a special election because Stringer, who received 40% of the votes cast in a mayoral election, was precluded as a matter of law from running for mayor, by virtue of her tenure as a county election commissioner. This Court stated:
when a significant number of legal votes have been rejected, or illegal votes received, an inquiry must be made to determine if the general election conformed to the will of the voters and if a special election should be called. Id. at 1011. In applying the two pronged test set out in Russell, it is evident that a special election was warranted in the case at hand because enough illegal votes were cast to change the outcome of the election and more than thirty percent of the total votes were disqualified. Russell, 443 So.2d at 1197. Due to Stringer’s disqualification, more than forty percent of the votes cast have been rendered invalid and without effect. To allow the election to stand as it now does would certainly be contrary to the will of the voters of Mound Bayou.
*1116 Stringer, 608 So.2d at 1358 (citing Noxubee County Democratic Executive Comm. v. Russell, 443 So.2d 1191, 1197 (Miss.1983); O’Neal v. Simpson, 350 So.2d 998, 1011 (Miss.1977)). Based on the reasoning in Stringer, McIntosh contends that a special election in the case sub judiee is required by law. The two-pronged test set out in Russell provided for special elections when “(1) enough illegal votes were cast for the contestee to change the result of the election, or (2) so many votes are disqualified that the will of the voters is impossible to discern.” Russell, 443 So.2d at 1197 (emphasis added). According to O’Neal, where a significant number of legal votes have been rejected or illegal votes received, there must be an inquiry as to whether a special election is needed. O’Neal, 350 So.2d at 1011.
¶ 22. Sanders points out that in the cases cited by McIntosh, the one constant is that more than one candidate remained in the fray. In Stringer, unlike the case sub judiee, three candidates remained after Stringer was disqualified. The votes cast for Stringer were not illegal, and therefore, they could affect the determination of the winner between the three remaining candidates. Sanders’s argument that there was no need for a special election in the case sub judiee is compelling given the fact that there were no other candidates. The trial court correctly decided that there was no need for a special election.

CONCLUSION

¶23. The board of supervisors in this case was acting in place of the election commissioners and not in their capacity as a board of supervisors. Therefore, Miss. Code Ann. § 23-15-951 supplied the appropriate procedure for contesting the election. As for whether a special election was necessary in this case, we believe that Sanders’s argument that no other candidates remained for there to be a special election is a compelling argument. For the foregoing reasons, this Court affirms the trial court’s finding that Miss.Code Ann. § 23-15-951 is the applicable statute and that a special election was not necessary. The trial court’s judgment is affirmed.
¶ 24. AFFIRMED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.