# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-EC-00502-SCT

*RICHARD TODD ANDREACCHIO AND*
*STACY RAE ANDREACCHIO*

*v.*

*KASSIE ANN COLEMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2020 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| TRIAL COURT ATTORNEYS: | WILLIAM C. HAMMACK |
| | RONNIE L. WALTON |
| | GREGORY MALTA |
| | JARED FRANK EVANS |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GREGORY MALTA |
| | JARED FRANK EVANS |
| ATTORNEYS FOR APPELLEE: | WILLIAM C. HAMMACK |
| | RONNIE L. WALTON |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 07/22/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     This case is labeled an election contest, but it is not one.  Though Richard Todd

Andreacchio and Stacy Rae Andreacchio invoke Mississippi Code Section 23-15-951 (Rev.

2018), they do not challenge the determination that the Republican candidate, Kassie Ann

Coleman, received more legal votes than her Democrat opponent in the November 2019

election for district attorney of the Tenth Circuit District.[1]  The Andreacchios concede

Coleman won her election.  And they view Coleman's election victory as the problem,

because they suggest she was not qualified to run in the first place.

¶2.     But Section 23-15-951 makes clear that its procedures cannot be used to challenge a

candidate's qualifications.  Instead, the mechanism to challenge a candidate who has been

qualified to run for his or her political party's nomination—as Coleman was here—is

provided in Mississippi Code Section 23-15-961 (Rev. 2018).  Under Section 23-15-961, the

time to assert a qualifications challenge is within ten days of the qualifying deadline, a date

that had passed long before the Andreacchios filed their complaint.

¶3.     For this reason, the trial judge did not err when he dismissed the Andreacchios'

complaint for failure to state a claim.  We affirm.

**Procedural History**

¶4.     The procedural history of this case is brief.  On November 22, 2019, the Andreacchios

filed a "Verified Complaint to Contest Election" against Coleman, the State Executive

Committee of the Mississippi Republican Party (Executive Committee), and Unknown John

Does 1-10.  The Andreacchios voluntarily dismissed the Executive Committee before it filed

any response.  After waiving service of process, Coleman responded with a motion to dismiss

or, alternatively, for summary judgment and an answer to the complaint.  The trial judge[2]

---

[1] The Tenth Circuit District encompasses Clarke, Kemper, Lauderdale, and Wayne Counties.

[2] The judges of the Tenth Circuit District recused, and this Court appointed Judge Frank G. Vollor to preside as a special trial judge.

2

granted Coleman's motion and dismissed the Andreacchios' complaint for failure to state a claim upon which relief can be granted. *See* M.R.C.P. 12(b)(6). Thus, the sole focus on appeal is whether the complaint was legally sufficient.

## I. The Andreacchios' Complaint

¶5. The Andreacchios filed their "Verified Complaint for Election Contest" on November 22, 2019. The complaint cited Mississippi Code Sections 23-15-951 and 23-15-963(9) (Rev. 2018) as the basis for the Kemper County Circuit Court's jurisdiction.

¶6. The Andreacchios, both residents of Lauderdale County, alleged that Coleman had been qualified as a candidate for district attorney of the Tenth Circuit District by the Executive Committee in March 2019. They asserted that the Executive Committee had the statutory duty under Mississippi Code Section 23-15-299(7) (Rev. 2018) and Mississippi Code Section 23-15-359(9) (Rev. 2018) to ensure Coleman met all the necessary qualifications to run for district attorney, including the requirement that she live in the Tenth Circuit District. They alleged the Executive Committee failed in this statutory duty because Coleman had not in fact been qualified because she had not established her domicile in the Tenth Circuit District by the November 2019 general election.[3]

¶7. They contended they would "show that through the misrepresentations of . . . Coleman and the negligence of the Executive Committee, the 2019 general election was decided

---

[3] Even though Coleman had taken a position as an assistant district attorney for the Tenth Circuit District in 2014 and had received a gubernatorial appointment to the district attorney position in 2018, the Andreacchios alleged Coleman never had domiciled in Lauderdale County. Instead, they claimed she lived with her husband in Georgia and only commuted to Mississippi for work during the week.

wrongly." And they requested the Circuit Court of Kemper County disqualify Coleman from holding the office of district attorney for the Tenth Circuit District.

## II.    Coleman's Motion to Dismiss

¶8.    In her motion to dismiss, Coleman countered that she had been a resident of Lauderdale County since 2014. But even so, she asserted that the factual dispute of her residence was not relevant. Because she had been duly elected and sworn in, Coleman argued the only available procedure to challenge her qualifications to hold the office of district attorney was a quo warranto action for which the Andreacchios lacked standing.[4]

## III.    Trial Judge's Dismissal

¶9.    The trial judge agreed with Coleman and dismissed the Andreacchios' complaint as untimely.

¶10.    He ruled that Section 23-15-951 was not an available statutory avenue for the Andreacchios to pursue their claim. The statute begins with the express limitation, "Except as otherwise provided by Section 23-15-955 or 23-15-961 . . . ." Miss. Code Ann. § 23-15-951. It then concludes, "A person desiring to contest the qualifications of a candidate for nomination in a political party primary election shall comply with the provisions of Section 23-15-96l." *Id.* So Section 23-15-961, not Section 23-15-951, controlled. And Section 23-15-961 requires a challenge to the qualifications of a candidate for a political party's nomination to be lodged within ten days of the qualifying deadline, which was in March 2019, eight months before the Andreacchios filed their complaint.

_____

[4] As support for this assertion, Coleman cited Mississippi Code Section 11-39-1 (Rev. 2019) and *State ex rel. Holmes v. Griffin*, 667 So. 2d 1319, 1324 (Miss. 1995).

¶11. The Andreacchios had argued that the language in Section 23-15-961(7) providing that "[a]fter a party nominee has been elected to public office the election may be challenged as otherwise provided by law" refers back to Section 23-15-951. The judge rejected this argument because it would render superfluous and meaningless the express exception in Section 23-15-951 for challenges under Section 23-15-961.

¶12. Reading the two statutes together, the judge concluded:

> the legislative intent [is] to have challenges to political party candidates be brought before the general election. If the challenge is successful, the political party would then be allowed to nominate another nominee for the office, see Miss. Code Ann. § 23-15-317. [The Andreacchios'] post general election challenge circumvents this option and potentially deprives the political party of a candidate. The Court interprets the reference "as otherwise provided by law" to refer to the action of Quo Warranto, Miss. Code Ann.§ 11-39-1, et seq, which is the common law and statutory procedure for challenging right or title to public office.

### IV. The Andreacchios' Appeal

¶13. After the trial judge denied the Andreacchios' motion for rehearing, they appealed. This Court reviews the grant of a motion to dismiss de novo and considers anew the allegations in the complaint to determine if it states a claim upon which relief can be granted. *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1184 (Miss. 2020); *see* M.R.C.P. 12(b)(6).

### Discussion

¶14. As the Andreacchios interpret the relevant election statutes, there are three time frames in which to lodge a qualifications challenge like the one they brought against Coleman. The first time frame, they contend, is the one set by Mississippi Code Section 23-

15-961(1)—within ten days after the deadline to qualify for a political party's nomination. The second time frame, they assert, is established by Section 23-15-951—within twenty days of the general election. Finally, the third time frame, they argue, starts when the election winner assumes the office to which she was elected. At that point, an action for quo warranto can be initiated under Mississippi Code Section 11-39-1.

¶15. According to this framework, the Andreacchios insist they filed their complaint during the "second time frame." Thus, when the trial judge dismissed their complaint as untimely, in their view, the judge erroneously created a "blackout period" in which no one could challenge Coleman's qualifications until she took the oath of office. But their entire argument on appeal is premised on the assumption that they, as electors in the Tenth Circuit District, had a right to challenge Coleman's qualifications at any point between Coleman's qualifying to run for the Republican nomination until she was sworn in to her first term as the elected district attorney. This is not so.

¶16. Election contests are a statutory remedy. *Pradat v. Ramsey*, 47 Miss. 24, 32 (1872). And contrary to the Andreacchios' characterization, the relevant statutes do not merely establish different time frames to challenge a candidate's qualifications. Instead, each statute governs a particular *type* of election challenge. In other words, what distinguishes these statutes and their application is not just the timing of the contest. Rather, determining which statute applies depends on what in fact is being challenged.

¶17. Under the methodology established by the Legislature, political parties determine if candidates for party nomination are district residents and thus qualified to run in the election.

6

*Garner v. State of Miss. Democratic Exec. Comm.*, 956 So. 2d 906, 909 (Miss. 2007) (citing Miss. Code Ann. § 23-15-299(7) (Rev. 2001); Miss. Code Ann. § 23-15-359(9) (Rev. 2001)). If a person wishes to challenge the party's determination that a candidate is qualified, he or she must follow the procedures of Section 23-15-961.[5] Miss. Code Ann. § 23-15-261(1), (7); *e.g.*, *Grist v. Farese*, 860 So. 2d 1182, 1183 (Miss. 2003).

¶18.   Once the primary election has occurred, if a person wants to challenge the election of the person returned as the party nominee, he or she must follow Mississippi Code Section 23-15-921 (Rev. 2018).  *E.g.*, *Glenn v. Powell*, 149 So. 3d 480, 485-86 (Miss. 2014).  But if someone wants to contest the general election, he or she must follow Section 23-15-951. Unlike a candidate-qualifications challenge, an election contest is aimed at the result of the election—i.e., "whether the election has had a termination, according to the will of a plurality, or majority of those qualified to vote." *O'Neal v. Simpson*, 350 So. 2d 998, 1009 (Miss. 1977) (quoting *Pradat*, 47 Miss. at 34).

¶19.   Finally, though not an election statute, Mississippi Code Section 11-39-1, which governs quo warranto actions, additionally provides a remedy "[w]henever any person unlawfully holds . . . any public office . . . ."  But "to pursue a modern public writ of quo warranto to challenge a person's *qualifications* to a public office, . . . the claim must be by the State on its own motion or for the person claiming the right to the office." *Griffin*, 667 So. 2d at 1324 (Miss. 1995).

---

[5] Challenges to the qualifications of independent candidates are governed by a separate statute, Mississippi Code Section 23-15-963. *Gourlay v. Williams*, 874 So. 2d 987, 988 (Miss. 2004).

¶20.    Candidate-qualifications contests, primary-election contests, general-election contests, and quo warranto actions are not interchangeable.  They are different substantive actions.  *See, e.g.*, **Waters v. Gnemi**, 907 So. 2d 307, 315 (Miss. 2005) (clarifying that statutory primary-election contests and general-election contests "are altogether different creatures"); **May v. Young**, 164 Miss. 35, 41, 143 So. 703, 704 (1932) ("The question of the successful candidate's eligibility to hold office is a proper subject of inquiry by quo warranto and cannot as a rule be raised in a statutory contest of election." (quoting 20 C. J. 275, p. 217)), *holding modified by* **O'Neal**, 350 So. 2d 998.  For this reason, we are unpersuaded by the dissenting opinion that Section 23-15-921 and this Court's interpretation of that statute somehow controls in this case.  Section 23-15-921 and Section 23-15-951 provide distinct actions for distinct election-related challenges.

¶21.    The statutes themselves make this clear, especially when it comes to the distinction between candidate-qualifications challenges and election contests.  For example, Section 23-15-951 begins, "Except as otherwise provided by Section 23-15-955 or 23-15-961,"[6] and further directs that "[a] person desiring to contest *the qualifications of a candidate* for nomination in a political party primary election shall comply with the provisions of Section 23-15-961."  Miss. Code Ann. § 23-15-951 (emphasis added).  Section 23-15-961 reiterates this distinction.  It provides that "[t]he procedure set forth in this section shall be the sole and only manner in which *the qualifications of a candidate* seeking public office as a party nominee may be challenged prior to the time of his nomination or election."  Miss. Code

---

    [6] Mississippi Code Section 23-15-955 (Rev. 2018) governs legislative-member contests.

8

Ann. § 23-15-961(7) (emphasis added). But "[a]fter a party nominee has been elected to public office, *the election* may be challenged as otherwise provided by law." *Id.* (emphasis added). And "[a]fter any person assumes an elective office, *his qualifications to hold that office* may be contested as otherwise provided by law." *Id.* (emphasis added).

¶22. In only one instance has this Court permitted a challenge of a candidate's qualifications brought under the guise of general-election contest. ***McIntosh v. Sanders***, 831 So. 2d 1111 (Miss. 2002). But as we acknowledged, ***McIntosh*** did not involve a "typical election contest." *Id.* at 1114. Instead, in that case, the pre-election statutory procedures of Section 23-15-963—Section 23-15-961's companion statute for challenging the qualifications of independent candidate—were not available. ***McIntosh***, 831 So. 3d at 1114. So this Court permitted a post-election challenge *because no other pre-election means was available*. ***Id.***

¶23. Moreover, the ***McIntosh*** Court was careful to point out Section 23-15-951's express exception for challenges that fall under Section 23-15-961. According to this Court,

> A complete reading of the statute reveals that a contest of the qualification of a candidate can properly be made under [Section 23-15-951], *with the exception being* a "person desiring to contest the qualifications of a candidate for nomination in a political party primary election shall comply with the provisions of Section 23-15-961" or "a person desiring to contest the election of another person returned as elected to any seat in the Mississippi Legislature shall comply with the provisions of Section 23-15-955." Miss. Code Ann. § 23-15-951.[7]

---

[7] The Andreacchios try to argue Section 23-15-951's clear exception for candidate-qualification challenges only applies to challenges *prior* to the general election. But as the trial judge noted, this interpretation would render the exception meaningless. If a candidate-qualification challenge could be brought after the general election, as the Andreacchios attempted to do, then why would the Legislature expressly except this type of challenge from

***McIntosh***, 831 So. 2d at 1113-14 (emphasis added) (citation omitted). So ***McIntosh*** actually reinforces that candidate-qualification challenges are excepted from Section 23-15-951 general-election contests.

¶24. The dissenting opinion asserts that ***Glenn v. Powell*** "squarely decided" the question of the Section 23-15-951's exception language. Dis. Op. ¶ 37. But ***Glenn*** dealt solely with Section 23-15-921, not Section 23-15-951. ***Glenn***, 149 So. 3d at 483-85. ***McIntosh*** *did* "squarely" address Section 23-15-951. ***McIntosh***, 831 So. 2d at 1113-14. Thus, by relying on ***McIntosh*** and not ***Glenn***, we are not ignoring relevant precedent but rather consistently applying it.

¶25. In light of these different statutes, to determine if the Andreacchios' complaint asserts a viable cause of action, this Court cannot simply, as the Andreacchios suggest, look to *when* they filed their complaint and work backwards to find a statute covering that time frame. Instead, to determine which election statute applies, we must look to the substance of their allegations, asking what type of challenge is being raised. Only after that question is answered does the relevant statute's established time frame come into play.

¶26. Turning to the Andreacchios' complaint, it is clear that they are challenging Coleman's qualifications as a candidate for the Republican party nomination. While the Andreacchios voluntarily dismissed the Executive Committee as a defendant, the complaint still alleges the Executive Committee, by qualifying Coleman, failed in its statutory duty because Coleman was not in fact a resident of the Tenth Circuit District. They also accuse

---

a statutory procedure that only becomes available once the general election occurred?

10

Coleman of concealing her true residency from the Executive Committee. Nowhere in their complaint do the Andreacchios allege or imply Coleman did not in fact receive the greatest number of legal votes in the November 5, 2019 general election. Nor do they suggest "legal votes have been rejected or illegal votes have been received, and because of the one or the other, or both, the result does not conform to the will of the voters, or uncertainty has been cast upon the result." *O'Neal*, 350 So. 2d at 1011 (quoting *Pradat*, 47 Miss. at 34-35). Based on these allegations, the Andreacchios have not brought a Section 23-15-951 general-election contest. *See May*, 143 So. at 704 ("[T]hat the appellee is disqualified from holding the office does not, as hereinbefore stated, render the votes cast for him illegal."). Instead, the complaint clearly lodges a Section 23-15-961 candidate-qualification challenge.

¶27. Thus, even if we were to extend *Glenn* and its logic to this case, as the dissent suggests, dismissal would still be proper based on the allegations in the Andreacchios' complaint. The complaint does not attack Coleman's election as the party nominee. The complaint asserts Coleman should have never been qualified to run for her party's nomination in the first place because she concealed her true residency. And it further asserts that the Executive Committee failed in its duty to ensure she was in fact qualified. So the allegations clearly support a qualifications challenge that should have been brought under Section 23-15-961.

¶28. Under Section 23-15-961, a petition challenging the candidate's qualifications must be filed within "ten (10) days after the qualifying deadline for the office in question." Miss. Code Ann. § 23-15-961(1). Further, "[t]he petition shall be filed with the executive

11

committee with whom the candidate in question qualified." *Id.* By waiting until after the general election to file a trial-court complaint attacking Coleman's qualifications to run for office, the Andreacchios clearly failed to follow these procedures.[8] Thus, they have no viable Section 23-15-961 claim.[9] As a result, the trial judge properly dismissed the complaint for failure to state a viable cause of action. *See* M.R.C.P. 12(b)(6). Thus, we affirm.

¶29.    **AFFIRMED.**

   **RANDOLPH, C.J., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. KITCHENS, P.J., NOT PARTICIPATING.**

   **KING, PRESIDING JUSTICE, DISSENTING:**

¶30.    This Court has already addressed the statutory language found in Mississippi Code Section 23-15-961 and has reached the opposite conclusion than does today's majority. We previously held that a candidate's qualifications may be challenged outside the ten days after the qualification deadline "as otherwise provided by law." Without substantively addressing this precedent, the majority essentially overrules it. Because this Court should follow past precedent, I respectfully dissent.

---

   [8] The Andreacchios further argue the trial judge's ruling, by not allowing a post-election qualification, creates a "loophole" for unqualified candidates who somehow sneak through qualification process. But under Section 23-15-961(4), "[a]ny party aggrieved by the action or inaction of the appropriate executive committee may file a petition for judicial review to the circuit court of the county in which the executive committee whose decision is being reviewed sits." So the Andreacchios had an available statutory procedure to seek judicial review of the Executive Committee's decision. This is not a loophole.

   [9] Similarly, the Andreacchios lack standing to proceed in a quo warranto action. *Griffin*, 667 So. 2d at 1324.

¶31. Mississippi Code Section 23-15-961 provides that "[a]ny person desiring to contest the qualifications of another person as a candidate for nomination in a political party primary election shall file a petition . . . within ten (10) days after the qualifying deadline . . . ." Miss. Code Ann. § 23-15-961(1) (Rev. 2018). It further provides that

> [t]he procedure set forth in this section shall be the sole and only manner in which the qualifications of a candidate seeking public office as a *party nominee* may be challenged *prior* to the time of his nomination or election. After a party nominee has been elected to public office, the election may be challenged as otherwise provided by law. After a party nominee assumes an elective office, his qualifications to hold that office may be contested as otherwise provided by law.

Miss. Code Ann. § 23-15-961(7) (Rev. 2018) (emphasis added).

¶32. Mississippi Code Section 23-15-951 states that

> [e]xcept as otherwise provided by Section . . . 23-15-961, a person desiring to contest the election of another person returned as elected to any office within any county, may, within twenty (20) days after the election, file a petition in the office of the clerk of the circuit court of the county, setting forth the grounds upon which the election is contested.

Miss. Code Ann. § 23-15-951 (Rev. 2018). It further provides that "[a] person desiring to contest the qualifications of a *candidate for nomination* in a political party *primary election* shall comply with the provisions of Section 23-15-961." *Id.* (emphasis added). Nearly identically, Mississippi Code Section 23-15-921 provides that

> [e]xcept as otherwise provided by Section 23-15-961, a person desiring to contest the *election* of another person returned as the nominee of the party to any county . . . may, within twenty (20) days after the primary election, file a petition with the secretary . . . setting forth the grounds upon which the primary election is contested . . . .

Miss. Code Ann. § 23-15-921 (Rev. 2018) (emphasis added).

13

¶33.   This Court addressed the juxtaposition of Mississippi Code Section 23-15-921 and the very language of Mississippi Code Section 23-15-961 at issue today in *Glenn v. Powell*. *Glenn v. Powell*, 149 So. 3d 480 (Miss. 2014).[10]  Dorothy Ann Glenn was the winner of a Democratic primary for the Ward 5 seat on the Greenwood City Council, and Andrew Powell was the runner-up.  *Id.* at 480-81.  Powell filed a primary election challenge pursuant to Mississippi Code Section 23-15-921 challenging Glenn's qualifications for the Ward 5 seat. *Id.* at 481.  Glenn, like the majority argues today, argued that Section 23-15-961 was the sole avenue under which a person's qualifications for office could be challenged.  *Id.* at 483.  This Court noted that Powell brought his challenge *after* the primary election.  *Id.*  Yet, Section 23-15-961 applies only to a "candidate for nomination," and not to a person certified as a party nominee.  *Id.* at 484.  We noted that "[a]t the time of Powell's contest filing, Glenn no longer was the 'candidate for nomination in a political party primary' under Section 23-15-961(1), but had been 'returned as the nominee of the party' under Section 23-15-921."  *Id.* We concluded that "Powell's contest pursuant to Section 23-15-921 was both procedurally timely and substantively meritorious."  *Id.*

¶34.   This Court emphasized that Section 23-15-921 was a procedure "otherwise provided by law" as described in Section 23-15-961.  *Id.* at 485.  We found that the language in Section 23-15-961(7) stating that the statute was "the sole and only manner in which the

---

[10]The majority's attempted distinction that *Glenn* addresses Section 23-15-921 while the Court today addresses Section 23-15-951 is a distinction without a meaningful difference.  First, the statutory language at issue in Section 23-15-951 today is nearly identical to the statutory language of Section 23-15-921 that was at issue in *Glenn*.  Second, the majority deflects from the fact that at the heart of the analysis in *Glenn* and today's case is actually the statutory language of Section 23-15-961.

14

qualifications of a candidate seeking public office as a party nominee may be challenged" is specifically qualified by the language "prior to the time of his nomination or election." ***Id.***

> Once the primary election has occurred, the candidate who sought the party nomination has transformed into the party nominee. The process, which is at issue in the present case, clearly is contemplated by Section 23-15-921, which provides an avenue of relief to an individual desirous of contesting "the election of another *person returned as the nominee of the party* to any county or county district office . . . ."

*Id.* at 485-86 (quoting Miss. Code Ann. § 23-15-921 (Rev. 2007)). Because "Powell was contesting Glenn's qualifications as a 'person returned as' the Democratic nominee . . . under Sections 23-15-921 and 23-15-927, and not her qualifications as 'a candidate for nomination' *prior to* nomination under Section 23-15-961(1)[,]" Powell's contest was timely and procedurally correct. *Id.* at 486.

¶35.    Similarly, the Andreacchios do not contest Coleman's qualifications as a "candidate for nomination in a political party primary" "*prior* to the time of [her] nomination or election." Miss. Code Ann. § 23-15-961(1), (7) (Rev. 2018) (emphasis added). They are challenging her qualifications after she has been "returned as elected" pursuant to Section 23-15-951. And such is a procedure "otherwise provided by law" as a method to challenge the election "*[a]fter* a party nominee has been elected to public office." Miss. Code Ann. § 23-15-961(7) (Rev. 2018) (emphasis added). Coleman was no longer a "candidate for nomination in a political party primary," but was a "person returned as elected to any office," a challenge to which is contemplated by Section 23-15-951. Miss. Code Ann. §§ 23-15-961(1), 23-15-951. In finding the Andreacchios' challenge untimely, and that the only method for a person (including a member of the general public) to challenge anyone's

qualifications is found in Section 23-15-961 (and thus must be filed within ten days of the qualifying deadline), the majority ignores clearly controlling past precedent. This creates a confusing and conflicting standard in which the same statutory language is interpreted in completely opposite manners in two cases merely seven years apart.

¶36. Contrary to the majority's assertions, *McIntosh* and *Glenn* are very easily harmonized, but the majority misinterprets *McIntosh* to create a conflict that does not, in fact, exist. *McIntosh* notes that

> McIntosh's argument that Miss.Code Ann. § 23-15-951 only applies to voter qualification is without merit. The statute simply does not state that the only contest to an election is whether the votes were legally cast. A complete reading of the statute reveals that a contest of the qualification of a candidate can properly be made under the said statute . . . .

*McIntosh v. Sanders*, 831 So. 2d 1111, 1113 (Miss. 2002). *McIntosh* notes the exception found in Section 23-15-961(1) for "a candidate for nomination in a political party primary election." Miss. Code Ann. § 23-15-961(1). And *Glenn* clearly holds that once a person is no longer such a candidate for nomination, Section 23-15-961 no longer applies. Coleman is no longer a candidate for nomination running in a political primary. She has been elected to office. Thus, Section 23-15-961 remains inapplicable pursuant to both *McIntosh* and *Glenn*.[11]

---

[11]In somewhat circular reasoning, the majority attempts to paint the complaint as in essence a Section 23-15-961 claim because it attacks Coleman's qualifications. But the complaint attacks her qualifications to hold the office of district attorney to which she was elected. It explicitly alleges that, because of Coleman's alleged lack of qualifications, "the 2019 general election was decided wrongly." The majority's reasoning would reclassify all complaints attacking qualifications as a Section 23-15-961 complaint solely because qualifications are at issue.

16

¶37. This question has been squarely decided by this Court in a decision that the majority does not substantively address nor overrule, nor does the majority address *stare decisis*. Because this statutory language has already been interpreted in a different manner by this Court, I dissent, and would reverse and remand to the trial court to continue with the Andreacchios' election challenge.